State ex rel. v. Stone.

STATE ex rel. FRISBY v. STONE et al., Appellants.

Division One, November 14, 1899.

1. **Appeals:** SCHOOL DIRECTORS. In a *quo warranto* proceeding to oust defendants from the office of school directors the appeal should be to the Supreme Court.

2. **Schools:** FORMING NEW DISTRICTS: VOTING BY PARTS SEPARATELY. The provision of the statute, section 7972, Revised Statutes 1889, providing for parts of a school district voting separately, does not apply to the case of a district formed by taking parts from two or more existing districts. It applies only to the case of dividing an existing district.

3. ———: ———: VOTING AS DISTRICTS. Where a new district is to be formed by cutting off parts of two districts, the vote on the formation of the new district must be by *districts,* and not by *parts* of districts. So that if a majority of the voters of two existing districts at regular annual meetings vote against cutting off parts of their territory for the formation of a new district, and afterwards a majority of the inhabitants of the territory proposed to be segregated get together and vote for the formation of the new district, and appeal to the county commissioner, he has no authority to declare the proposed segregation a legal corporation, and a *quo warranto* will lie to oust those who undertake to exercise the office of school director therein.

*Transferred from Kansas City Court of Appeals.*

AFFIRMED.

D. J. HEASTON, SALLEE & CROSSMAN and J. C. WILSON for appellants.

(1) Under Revised School Law of Missouri, 1897, as compiled by state superintendent, together with his comments thereon, the petition is bad for the reason that the petitioners and parties who resided on sections three and ten, school district one had a right to appeal, they having voted

for the change.    Section 7972, School Laws, 1897, as pub-
lished by state superintendent Kirk.    (2)    The court erred
in declaring the law to be that under the evidence in this
case, there could be no appeal to the county school commis-
sioner, as both the old districts voted against division, and
refusing to consider the vote of part of district one voting
separately, as shown by the evidence.    A fair construction of
section 7972, is certainly in perfect harmony with the ap-
peal in this case.    The appeal may be taken by one or more
interested parties.    In this case the appeal was taken by fif-
teen interested parties residing in that part of the district to
be set off.

A. F. Woodruff and A. S. Cumming for respondent.

(1)    School districts are corporations of limited power.
They have the powers expressly granted to them, and such
implied powers as are necessary to enable them to perform
their duties, and no more.    The statutes giving them such
powers should be strictly construed.    Buchanan v. Hanni-
bal, 25 Mo. App. 85; 21 Am. and Eng. Ency. of Law, 800;
St. Louis v. Weber, 44 Mo. 547; Mathews v. Skinker, 62
Mo. 329.    (2)    The subdivision of the several counties and
townships of the State into school districts, and the method
of their formation are creatures of statute, and in the organ-
ization of new school districts the provisions of the statute
must be strictly complied with.    School Dist. v. School Dist.,
94 Mo. App. 612; State ex rel. v. Eden, 54 Mo. App. 31;
Hicks v. Jameson, 10 Mo. App. 35.    (3)    Prior enactments
on same subject may be considered in aid of construction.
23 Am. and Eng. Ency. of Law, 315 and 316; Coffin v.
Rich, 45 Me. 507.    (4)    The county commissioner has no
jurisdiction to act except in strict compliance with the pro-
visions of section 7972, Revised Statutes 1889.    Any act
performed outside of such jurisdiction is void.    School Dist.

No. 1 v. School Dist. No. 2, 94 Mo. 612; State ex rel. v. Riley, 85 Mo. 156.

MARSHALL, J.—*Quo warranto* to oust defendants from the office of school directors of school district number Eight, Township Sixty-four, Range Twenty-nine of Harrison county.

Plaintiff obtained judgment in the circuit court, and defendants appealed to the Kansas City Court of Appeals, and that court transferred the case to this court on the ground that the title to an office under this State is involved, and hence this court has jurisdiction, under section 12 of Article VI of the Constitution. This was a proper order. [State ex rel. v. Bus, 135 Mo. l. c. 334.] This court exercised jurisdiction in a similar case. [State ex rel. v. Rose, 84 Mo. 198.]

The solution of the question whether there is any such legal organization as School District Number 8, Township 64, Range 29 of Harrison county, determines the right of the defendants to the office involved in this case.

Prior to April 6th, 1897, township 64 contained, *inter alia,* school districts One and Two. The former was composed of sections, 1, 2, 3, 10 ,11, 12, 13 and 14, and the latter of sections 4, 5, 6, 7, 8, and 9. Proper preliminary steps were taken prior to the annual meetings in school districts one and two, held on April 6th, 1897, to create a new school district, to be known as school district number Eight by taking sections 3 and 10 from district number One and 4 and 9 from district number Two, and thus form the proposed new district number Eight.

At the regular annual meetings of districts One and Two, the proposed segregation and consolidation was submitted to the votes of each of such districts and voted upon separately, and the scheme was defeated by a majority vote of each district.

Thereafter a majority of the voters of sections 3 and 10 got together and voted in favor of the scheme. Thereupon fifteen of the citizens and qualified voters of the proposed new school district, appealed to the county school commissioner, who decided in favor of the scheme, established school district number Eight, and gave proper notices thereof. The defendants were afterwards duly elected directors of said district number Eight.

If district number Eight is a legally constituted school district, the defendants are its directors. The crucial question, therefore, is as to the legal existence of district number Eight, and the true construction of section 7972, R. S. 1889, determines the question involved herein. The portion of that section material to this case is as follows: "When it is deemed necessary to form a new district, composed of two or more entire districts, or of parts of two or more districts, or to divide one district to form two new districts from the territory therein, or to change the boundary lines of two or more districts it shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual meeting; and the voters, when assembled, shall decide such question by a majority vote of those who vote upon such proposition. If the assent to such change be given by all the annual meetings of the various districts thus voting, or of the parts of a district to be divided, each part voting separately, the district or districts shall be deemed formed or the boundary lines thus changed from that date; but if a part of a district to be divided, or one or more of the districts affected, vote in favor of such change, and the remaining part of the district to be divided, or one or more of the districts affected, vote against

such change, the matter may be referred to the county com-
missioner for his decision," etc.

This section provides for four contingencies: 1st, to
form a new district by consolidating two or more entire dis-
tricts; 2nd, to form a new district by carving out parts from
two or more districts; 3d, to form a new district by dividing
one district into two parts; and 4th, to change the boundary
lines of two or more districts.

The history of the evolution of the law into its present
shape, throws light upon the intention of the lawmakers
and aids in arriving at the true meaning of section 7972.

Provision was made, by section 7023, R. S. 1879, for the
formation of new school districts by taking portions of two or
more existing districts, and for changing the boundary lines
of any district. A notice was required to be posted in three
public places, in each district interested, twenty days prior to
the time of the annual meeting. It was further prescribed
that: "And the voters, when assembled, shall decide such
question by majority vote. If the assent to such formation
be given by all the annual meetings of the various districts
thus voting, the district shall be deemed formed, or the boun-
dary lines thus changed from that date. But if a part of the
districts affected vote in favor of and a part against such
change, the matter shall be referred to the county commis-
sioner for final decision, etc."

So the formation of a new district by taking parts from
two or more existing districts was required to be settled by a
majority vote of the voters of the existing districts, when
assembled in annual meeting. If assent be given "by all the
annual meetings of the various districts thus voting," the
district was deemed formed. But "if a part of the districts"
(note the plural number) "affected vote in favor of and a part
against such change, the matter shall be referred to the county
commissioner for final decision." Thus it will be seen that
the proposition was required to be submitted to the voters

of each district to be affected, at an annual meeting, and the majority of the votes in each district controlled. If a majority of the voters in one district voted for the proposition and a majority of the voters in another district voted against it, the matter could be referred to the county commissioner for final decision. But the votes were to be taken by districts and at an annual meeting. Each district is a complete entity unto itself. No one but a qualified voter of the district could participate in the meeting. Each district being a separate body politic, there could not be a joint meeting of two districts to vote upon or decide the question of each giving up a part of its jurisdiction and power so as to form a new district, but each district necessarily acted separately. Acting thus if a majority of each district favored the scheme, the new district was, *ipso facto*, formed, and if a majority of each district opposed the scheme, the proposition, *ipso facto*, failed, and the will of the people was ascertained and prevailed in either event, without any other or outside interference. It was only in case the people of the two or more districts could not agree that the matter was to be referred to the county commissioner for final decision, and this was made necessary by reason of the inability of the people to agree. In every instance where the people were given power to act, it was required to be a majority of the people of a district when assembled, in annual meeting. ⋅ Each district being a separate body corporate, it required the action of the body corporate to act to give legal effect to the act. No fraction or part, major or lessor, of the body corporate had power to act except at an annual meeting when all the members of the body politic had notice of the meeting and an opportunity to be present and vote, and a special notice of intention to segregate a portion of the district and combine the part thus cut off with another fraction cut off from another district, was required to be given twenty days before the annual meeting. It was no more contemplated at that time that a portion of the voters in the district,

being members of the body corporate, could hold a meeting separate from the other voters and members and cut themselves away from the body corporate and form a new corporation with the aid of other persons, than it was contemplated that the majority or minority of any other kind of a corporation could hold a separate meeting and cut loose from such a corporation. And this is true whether the number thus proposing to sever their relations, constitute a majority or minority. The majority, when the corporation is duly assembeld can control any kind of a corporation, but no number can legally act for the corporation, except when duly assembled, which implied a regular stated meeting or special meeting upon due notice.

By the Act of March 29th, 1883 (Laws 1883, p. 182), section 7023 R. S. 1879 was repealed and a new section 7023 enacted. The only material change was to provide for the formation of a new district by *dividing* an existing district. The method of forming a new district by taking off parts of two or more districts was preserved. The provisions relative to the manner of voting were the same as those specified in the repealed section. Some slight changes in procedure by the county commissioner and as to the number of notices of the proposed change, were made.

By the Act of March 31st, 1887 (Laws 1887, p. 259), the Act of 1883 was repealed and a new section 7023 was enacted. This act granted the right to form a new district by consolidating two or more entire districts, or by dividing one district to form two new districts from the territory therein, and also the right to change the boundary lines of two or more districts. It made no change in the notice required nor in the requirements that the proposition should be voted upon at an annual meeting, and still required the majority vote of the voters, when so assembled. The provision of section 7023, above quoted as to the voting, was changed so as to read: "If the assent to such change be given by all the annual meet-

ings of the various districts thus voting, *or of the parts of a district to be divided, each part voting separately,* the district or districts shall be deemed formed, or the boundary lines thus changed from that date; but if a part of a district to be divided, or one or more of the districts affected, vote in favor of such change, and the remaining part of the district to be divided, or one or more of the districts affected, vote against such change, the matter may be referred to the county commiss·oner for his decision," etc.

Thus the Act of 1883 provided for the formation of a new district by dividing an existing district into two parts, but made no change in section 7023, which required the proposition to be settled by a vote of the majority of the voters of the district, when duly assembled in an annual meeting of the body corporate. The amendment of 1887, related solely to the method of settling the proposition to divide an existing district and forming a new district out of the part. For the first time we here find the power given to the parts of a district to vote separately, and of the right of appeal to the county commissioner to settle a disagreement between people of the same district. But it will be noted that this power was only given in case an existing district was proposed to be *divided.* It was not given in case two existing districts were to be consolidated, nor in case the boundary lines of two or more districts were to be changed, and in the nature of things no such power was necessary in those cases, for they could properly act as districts.

Thus the law was up to the revision of 1889. The only change, material to the matter now in hand, made by the revision of 1889, was to insert the words, "or of parts of two or more districts," so as to make it read, "when it is deemed necessary to form a new district, composed of two or more districts, *or of parts of two or more districts.*" That is, the law until then contemplated the formation of a new district by the consolidation of two or more existing districts, by

dividing a district into two parts, thus forming a new district, and for changing the boundary lines between two or more districts, and the revision of 1889, for the first time, authorized the formation of a new district to be composed of parts of two or more districts. But no change was made in the manner of voting upon the proposition. The change made by the Act of 1887, providing for parts of a district voting separately, was evidently intended to apply only to the case of a dividing of an existing district. It could not apply, at the date of its passage, to the case of a district formed by taking parts from two or more existing districts, because there was no authority in law at that time for so forming a new district.

When the Act of 1887 was carried into the revision of 1889, and became section 7972 thereof, it was a mere continuation of the Act of 1887 (with the addition above noted) and not a new enactment except as to such addition. [Section 6606, R. S. 1889.]

It may be argued that the same reason that prompted the legislature to authorize the parts of a district to be divided to vote separately with the right to appeal to the county commissioner if the parts could not agree, exists in favor of allowing the parts of two or more districts to be segregated from their respective bodies, and formed into a new district, to vote separately from their respective districts; that in one instance it is a dividing of the body corporate into two bodies politic, while in the other it is dividing two or more bodies corporate and forming a new corporation of the parts cut off from the two or more districts. The reason and logic of the argument may be conceded, but the argument must fail, because there is no express provision of law authorizing the parts to vote separately except in cases where an existing district is to be *divided*. In all other cases the statutory procedure is the same as it was under the Revised Statutes of 1879, that the vote must be by *districts* and not by parts of districts, and the courts must enforce the laws as they are made, without

regard to whether they could have been made more reasonable or logical or not. The remedy in all such cases is to apply to the General Assembly to amend the law, and not to the courts to interpolate more reasonable or convenient provisions into existing statutes. This is forcefully illustrated by the changes in the law respecting the subject in hand. In 1883, new districts were allowed to be formed by dividing an existing district. The method of procedure was not changed. Hence the vote had to be taken at the annual meeting of the voters of the district. This was found inconvenient or unsatisfactory. So the Act of 1887 provided for taking the vote by the parts of the existing district to be divided separately. Without this express authority the old method of voting by districts would have to be followed. The legislature authorized voting by parts in this one contingency, and if voting by parts is desirable in any other event, the legislature alone has power to authorize it. It has not, so far, done so in cases, like this, where the new district is to be made up of parts taken from two or more existing districts.

It follows that as districts One and Two of Township 64, Range 29, of Harrison county, when duly assembled in their respective annual meetings both voted against the proposition to form the new district number Eight, by taking off parts of districts One and Two respectively, the scheme or proposition to form such new district failed, and the action of the voters in that part of district number One proposed to be detached from that district, in voting separately in favor of the scheme was without authority of law, afforded no basis for an appeal to the county commissioner, and that his decision was of no legal force, and therefore, that there never has been legally established any such district as school district number Eight, Township 64, Range 29, of Harrison county, and hence the defendants are not the lawful directors of such school district.

The judgment of the circuit court, ousting defendants from the office of directors of such school district, was right and is affirmed.

All concur.