**COLUMBIA ATHLETIC
CLUB, Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 80074.

Supreme Court of Missouri,
En Banc.

Jan. 27, 1998.

Carole lewis Ilse, John P. Barrie, Juan D. Keller, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Respondent.

LIMBAUGH, Judge.

This case involves a dispute over the assessment of sales tax under section 144.020, RSMo,[1] for basic membership dues at a physical fitness center. Section 144.020.1(2) provides that a sales tax is due for "the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events." The sole issue for determination in this case is wheth-

---

1. All statutory references are to RSMo 1994 un-　less otherwise indicated.

er Appellant's fitness center is a "place of amusement, entertainment or recreation, games and athletic events." The Administrative Hearing Commission (AHC) decided this issue against the appellant, which then appealed to this Court. Because this case involves construction of the revenue laws, this Court has jurisdiction. Mo. Const. art. V, sec. 3. The decision of the AHC is reversed and remanded for further proceedings consistent with this opinion.

## I.

Columbia Athletic Club ("Appellant") is a corporation that operates a fitness center under the name of "Gold's Gym" in Columbia, Missouri. The fitness center offers facilities for noncompetitive activities including aerobics, strength training, cardiovascular training, and nutrition/weight control training, but it does not offer facilities for tennis, racquetball, basketball, or swimming. The fitness center is located in a four story building with equipment for different activities located on each floor. The top floor contains circuit training equipment that is designed to strengthen different muscle groups, as well as equipment intended to improve the body's cardiovascular system. The third floor has strength training equipment similar to that available on the top floor, but the equipment is not arranged in organized circuits. The third floor also has an area for use of free weights. The second floor contains the front desk, pro shop, membership offices, and an aerobics center in which various aerobics classes are held. The bottom floor contains locker rooms, child care facilities, offices for a nutritional program called APEX, and tanning rooms. Each of the locker rooms contains a hot tub, sauna, cold tub and showers.

Appellant's fitness center has a certified training staff that assists members in implementing their individual exercise programs. New members typically meet with a membership coordinator who completes a personal performance analysis of the member and helps the member develop an exercise plan that is formulated to meet that member's specific goals and objectives. The training staff is also available to assist members during their workouts and they offer encouragement and motivation to members to increase the frequency and intensity of their workouts.

Appellant's fitness center is designed to emphasize five primary components of fitness: muscular strength, muscular endurance, flexibility, cardiovascular fitness, and body composition. Appellant's stated philosophy in operating the fitness center is to emphasize health and personal improvement through exercise. At least a substantial percentage of members are referred to the fitness center by a physician for health reasons, and some members even receive reimbursement from their health insurers for the cost of the program.

The fitness center does not operate as a social club. Instead, members generally work out on an individual basis in a noncompetitive atmosphere. The fitness center does play upbeat background music in an attempt to motivate its members and provides television monitors in the cardiovascular area to occupy members during long-term stationary exercises. However, the music and television monitors constitute only a minor component of the entire fitness center. The fitness center's major focus is on improving health through physical exercise.

Membership in Appellant's fitness center can be purchased for any period from one month to one year. The basic membership dues entitle a member to access to the facilities and equipment, including aerobics classes and the assistance of the staff. Members pay extra fees for personal trainers, tanning rooms, towel service, child care, and participation in the APEX nutritional program.

The current dispute began when Appellant received a letter from the Department of Revenue stating that the Department intended to collect sales tax on health club memberships. The Director of Revenue ("Director") conducted an audit of Appellant's fitness center for the tax period from April 1991 through March 1994 and issued assessments for that period. On May 1, 1995, Appellant entered an agreement with the Director providing that Appellant could amend its return for November 1994 and pay sales tax, additions, and interest under pro-

test. Per the agreement, Appellant filed a refund claim for the taxes paid under protest, and the Director issued a decision denying the claim. The parties also agreed that Appellant could appeal the Director's decision to the AHC, and that the AHC's decision would be binding as to the audit period and all subsequent periods up to the date of the AHC's decision. The AHC held that Appellant's fitness center was a place of recreation and, consequently, was subject to sales tax for membership fees under section 144.020.1(2). This case is a petition for review of the AHC's decision.

## II.

The language of section 144.020.1(2) indicates that a facility is subject to sales tax when three elements are present: (1) an amount is paid for admission and seating, or fees are paid; (2) the amount or fee is paid to or in a "place"; and (3) the place is one "of amusement, entertainment or recreation, games and athletic events." The first and second elements are not at issue in this case, and the sole question is whether Appellant's fitness center is a "place of amusement, entertainment or recreation, games and athletic events." Although the terms in this clause are of common usage, one must look closely to understand the meaning of the clause as a whole.[2] The use of conjunctions and placement of commas within the clause are critical. As a matter of proper grammar, the five terms—amusement, entertainment, recreation, games and athletic events—are effectively grouped together in three categories: 1) places of amusement; 2) places of entertainment; and 3) places of recreation, games and athletic events. It is uncontested that Appellant's fitness center is neither a place of amusement nor a place of entertainment. As to the third category, the use of the conjunction "and" requires that all three elements—recreation, games *and* athletic events—must be present, and it is not sufficient to determine only whether the facility is

a place of recreation. Because the fitness center does not offer games or athletic events, it cannot be characterized as a place of recreation, games and athletic events.

In the several prior cases interpreting this clause, this Court has never focused on the manner in which the conjunctions and commas are used. Instead, the words "amusement, entertainment or recreation" have been grouped as a single category and generally treated synonymously without regard to the remaining words "games" and "athletic events." *See Moon Shadow, Inc. v. Director of Revenue*, 945 S.W.2d 436, 437 (Mo. banc 1997) (referring interchangeably to "place[s] of amusement, entertainment or recreation" and to "place[s] of amusement"); *High Adventure Game Ranch, Inc. v. Director of Revenue*, 824 S.W.2d 905, 906 (Mo. banc 1992) (referring to "place[s] of amusement, entertainment or recreation"); *Fostaire Harbor, Inc. v. Director of Revenue*, 679 S.W.2d 272, 273 (Mo. banc 1984) (referring interchangeably to "place[s] of amusement, entertainment or recreation" and to "place[s] of amusement"); *L & R Distributing Co. v. Dept. of Revenue*, 648 S.W.2d 91, 94–95 (Mo. banc 1983) ("*L & R Distributing II* ") (referring to "places of amusement, etc."); *Spudich v. Director of Revenue*, 745 S.W.2d 677 (Mo. banc 1988) (referring to the terms "amusement," "entertainment" and "recreation," and focusing on the term "amusement"); *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596, 598–99 (Mo. banc 1977) (referring interchangeably to "place[s] of amusement, entertainment or recreation" and to "place[s] of amusement, etc."); *L & R Distributing, Inc. v. Dept. of Revenue*, 529 S.W.2d 375, 378 (Mo. banc 1975) ("*L & R Distributing I* ") (referring interchangeably to "place[s] of amusement or entertainment," to "place[s] of amusement," and to "place[s] of amusement, etc."). The analysis used in these cases further indicates a tendency to mix and match these terms. *Moon Shadow,*

---

2. Inexplicably, the legislature has used similar but inconsistent language at various points in the sales tax provisions. Section 144.020.1(2) refers to places of "amusement, entertainment or recreation, games and athletic events." Section 144.020.1(8) drops the phrase "games and athletic events," and merely refers to places of

"amusement, entertainment or recreation." Section 144.010.1(9)(a), RSMo Supp.1997, is virtually identical to section 144.020.1(2), but changes the word "or" to "and" so that the phrase refers to places of "amusement, entertainment *and* recreation, games and athletic events."

945 S.W.2d at 437 (concluding that a building was not a "place of amusement" because it did not offer "amusement, entertainment or recreation activities"); *Fostaire*, 679 S.W.2d at 273 (concluding that helicopter tours were "places of amusement" because they were "entertaining and recreational"). None of these cases have focused solely on the meaning of the term "recreation." That the words "games and athletic events" have been ignored can possibly be explained by the fact that no prior case involved a place where games and athletic events were offered. In any event, the word "recreation" is more properly viewed as the first word in the separate category of "recreation, games and athletic events."

Arguably, the statute is ambiguous despite its grammatical structure because "recreation" is in a sense synonymous with or at least overlaps with the words "amusement" and "entertainment." In the internal context of the clause, the words fit well together. On the other hand, "recreation" fits just as well with "games and athletic events," which are, in fact, important types of recreation that the legislature may well have intended to emphasize. Even if the clause is somehow ambiguous, this Court abides by the rule of construction that statutes imposing taxes are to be construed against the taxing authority and in favor of the taxpayer. *Old Warson Country Club v. Director of Revenue*, 933 S.W.2d 400, 403 (Mo. banc 1996); *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 356 (Mo. banc 1995). Utilizing this rule, any ambiguity must be resolved by rejecting the notion that "amusement, entertainment or recreation" is a single category for purposes of taxation.

We hold that the pertinent category for taxation under section 144.020.1(2) is "recreation, games and athletic events." Because it is uncontested that the fitness center does not offer games and athletic events, it is not subject to the sales tax.

### III.

■ The dissent argues that section 144.020.1(2) should be viewed as designating three categories of places that are subject to sales tax, one of which is the category of "amusement, entertainment or recreation." Under this theory, if the facility in question falls within the scope of any one of these three terms, then it is subject to sales tax. However, even if this court accepts the statutory construction proposed by the dissent, Appellant's fitness center is still not subject to sales tax. It is uncontested that Appellant's fitness center is not a place of amusement or entertainment, and the facts in this case do not establish that the fitness center is a place of recreation.

■ The term "recreation" is not statutorily defined. Thus, this Court must consider standard canons of statutory construction in determining whether the fitness center at issue falls within the scope of this term. *Spudich*, 745 S.W.2d at 680. "The purpose of statutory construction is to seek the intent of the legislature." *Id.* In examining the legislature's intent, we assume that the legislature did not intend a strained construction of the term "recreation." *Moon Shadow, Inc.*, 945 S.W.2d at 437. And, once again, we are guided by the general rule that statutes imposing taxes are to be construed against the taxing authority and in favor of the taxpayer. *Old Warson Country Club*, 933 S.W.2d at 403; *Delta Air Lines, Inc.*, 908 S.W.2d at 356. Moreover, absent a statutory definition, the words used in the statute will be given their plain and ordinary meaning as derived from the dictionary. *Moon Shadow*, 945 S.W.2d at 437; *Spudich*, 745 S.W.2d at 680.

■ In the *Spudich* decision, this Court recognized the common dictionary definition of recreation: "Recreation" is "a means of getting diversion or entertainment." *Spudich*, 745 S.W.2d at 680 (citing to *Webster's Third New International Dictionary*, 1899 (1966)). This Court has also considered the meaning of the term "place," and has found that "[a] 'place' is 'a building or locality used for a special purpose'.... *Webster's Third New International Dictionary* 1727 (1976)." *Moon Shadow*, 945 S.W.2d at 437. Thus, in the context of section 144.020.1(2), a place of recreation is a building or locality that has as its special purpose, the facilitation of diversion or entertainment. The focus of the analysis, when applying section 144.020.1(2),

is necessarily on that special purpose, or more accurately, on the *primary purpose* of the facility involved. If the primary purpose of a facility is to facilitate diversion or entertainment, then the facility is a place of recreation and is subject to assessment of sales tax under section 144.020.1(2).

Having determined that application of section 144.020.1(2) turns on the primary purpose of the facility involved, this Court must now consider the primary purpose of Appellant's fitness center. Appellant contends that his fitness center operates with a primary purpose of allowing members to improve their health through a program of physical exercise. In contrast, the Director contends that the fitness center provides members with a pleasant diversion and enjoyment through physical exercise. In essence, the parties agree that Appellant's fitness center facilitates exercise, but they disagree regarding the purpose of the exercise that is facilitated. The problem is that the term *exercise* connotes activity that has both health-related aspects and recreation-related aspects. The dual nature of exercise poses a dilemma when attempting to determine whether an exercise facility is subject to sales tax under section 144.020.1(2).

This Court has previously recognized that a facility may have a dual nature in that it provides both recreational and non-recreational benefits. *Spudich*, 745 S.W.2d at 680–81; *Fostaire Harbor, Inc.*, 679 S.W.2d at 273. In that regard, the mere fact that minor recreational activities occur in a certain facility does not make that facility a place of recreation. *L & R Distributing I*, 529 S.W.2d at 378. When considering facilities that have a dual nature consisting of recreational and non-recreational elements, this Court must identify the primary purpose of that facility, and in that process consider how the facility would be viewed "within normal contemplation." *Spudich*, 745 S.W.2d at 681; *L & R Distributing II*, 648 S.W.2d at 94. Indeed, even the comparative amounts of revenue derived from recreational and non-recreational sources are not dispositive on the issue of whether a facility is viewed as being a place of recreation. *Spu-*

*dich*, 745 S.W.2d at 681 (holding that a billiard center was a recreational facility despite the fact that it took in more revenue from non-recreational activities than it did from recreational activities).

The critical issue in this case is whether the primary purpose of Appellant's fitness center in facilitating exercise is to provide health benefits or to provide recreation. In other words, are the recreational aspects of the exercise that is facilitated incidental to the health benefits, or are the health benefits incidental to the recreational aspects? This is a fine line. The primary and incidental purposes of exercise vary greatly depending on the nature of the exercise involved. Some types of exercise, such as racquetball or tennis, would be commonly viewed as primarily recreational activities, although they undeniably provide a health benefit to the participants. Other types of exercise, such as pushups and situps, would be commonly viewed as activities engaged in primarily for health benefits. To resolve this case, we must determine whether the particular types of exercise facilitated by Appellant's fitness center, and the surroundings and circumstances in which that exercise is facilitated, have a primary purpose of providing health benefits or recreational benefits.

As indicated above, there is a fine line between exercise that is primarily focused on health benefits and exercise that is primarily focused on recreation. Determining the type of exercise involved in a particular case is a process that depends on the evidence provided in each individual case. In the present case, the Director provided virtually no evidence to refute Appellant's proof that the primary focus of his fitness center is to facilitate improved health through physical exercise. Based on the evidence presented, we conclude that Appellant's fitness center operates with a primary purpose of allowing members to improve their health through a program of physical exercise. As stated, the fitness center is divided into different areas designed to address different aspects of health improvement. It does not, on the other hand, accommodate a variety of activities that are traditionally considered recreational such as tennis, swimming, racquetball

and basketball. The focus of Appellant's fitness center is on improving health, and not on pursuing diversion or entertainment.

It is certainly true that some aspects of Appellant's fitness center, such as the background music, the televisions in the cardiovascular section, and the hot tubs and saunas, may be viewed as diverting or entertaining activities. But, these elements constitute a minimal component of Appellant's fitness center. As was the case in *L & R Distributing I*, the presence of these diverting and entertaining elements does not act to convert Appellant's entire fitness center into a place of recreation. It may also be true that some members of Appellant's fitness center find the use of the exercise equipment to be pleasant and enjoyable, in addition to being of benefit to their health. However, the analysis under section 144.020.1(2) focuses on the basic purpose of the facility involved and not on the subjective interests of certain members of that facility. The basic purpose of Appellant's fitness center is clearly improvement of health through physical exercise.

### IV.

Because Appellant's fitness center is not a place of "recreation, games and athletic events," we hold that the basic membership dues for the fitness center are not subject to sales tax under section 144.020.1(2). Furthermore, even if the statute focused solely on places of recreation, Appellant's fitness center would still not be subject to sales tax because under the evidence it does not constitute a place of recreation. For these reasons, the decision of the AHC is reversed, and the case is remanded.

ROBERTSON, J., concurs.

COVINGTON, J., concurs in part III only.

WHITE, J., concurs in part III and concurs in result in separate opinion filed.

BENTON, C.J., dissents in separate opinion filed.

PRICE and HOLSTEIN, JJ., concur in opinion of BENTON, C.J.

1. All statutory references are to RSMo 1994 un-

WHITE, Judge, concurring in part and concurring in result.

While I agree with the dissent that the relevant question under this Court's precedents is whether Columbia Athletic Club operates a "place of recreation," I agree with the principal opinion that it does not. Accordingly, I concur in section III of the principal opinion and concur in result.

BENTON, Chief Justice, dissenting.

Because the principal opinion is contrary to the plain meaning and settled interpretation of the sales tax law, I dissent. The principal opinion's novel conclusions do not withstand analysis under the touchstone for statutory construction in this state:

> The primary rule of construction of statutes is to ascertain the lawmakers' intent, from the words used if possible; and to put upon the language of the Legislature, honestly and faithfully, its plain and rational meaning and to promote its object, and the manifest purpose of the statute, considered historically, is properly given consideration.

*Cummins v. Kansas City Pub. Serv. Co.*, 334 Mo. 672, 66 S.W.2d 920, 925 (1933).

### I. Statutory History

The principal opinion ignores the sixty-five-year history of subdivision 144.020.1(2)—all dismissed with one word: "Inexplicably." Subdivision 144.020.1(2) [1] provides:

> A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:
>
> . . . .
>
> (2) A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events. The language of the sales tax law, through its enactment and amendment, shows that the

less otherwise noted.

General Assembly has not linked together "recreation, games and athletic events," but instead has created alternative categories of 1) places of amusement, entertainment or recreation, 2) games and 3) athletic events.

The language of the sales tax law, through its enactment and amendment, shows that the General Assembly has not linked together "recreation, games and athletic events," but instead has created alternative categories of 1) places of amusement, entertainment or recreation, 2) games and 3) athletic events.

### A. Original Enactment and Early Amendments

"The history of the evolution of the law into its present shape throws light upon the intention of the lawmakers, and aids in arriving at the true meaning" of subdivision 144.020.1(2). *State ex rel. Frisby v. Stone*, 152 Mo. 202, 53 S.W. 1069, 1070 (1899). As originally enacted in 1933, the Sales Tax Act applied to charges and fees to "places of amusement, games and athletic events." *1933–1934 Mo. Laws Extra Session 157, sec. 2A(a); see also L & R Distrib., Inc. v. Missouri Dep't of Revenue*, 529 S.W.2d 375, 377 (Mo. banc 1975). In 1935, the words "entertainment or recreation" were inserted into the list. *1935 Mo. Laws 415, sec 2.* The 1935 law carried forward the original categories of "places of amusement, . . . games and athletic events." *Id.* When a section of law is amended, only the added part is treated as a new law, and the remainder is a continuation of the former law. *Sec. 1.120; Stone*, 53 S.W. at 1071.

The original and early enactments demonstrate that "recreation" is not linked with "games" and "athletic events." If linked with any concept in this law, it is "entertainment." In 1937, the phrase "or in" was added to section 144.020.1(2) after "fees paid to." *1937 Mo. Laws 557, sec. 2.* Otherwise, section 144.020.1(2)'s language has remained unchanged since 1935.

### B. 1985 Amendment to Section 144.020

Other subdivisions of section 144.020, however, have been amended. A section of law should be interpreted with reference to sub-

sequent amendments. *City of Willow Springs v. Missouri State Librarian*, 596 S.W.2d 441, 445 (Mo. banc 1980). The "legislature's action of repeal and enactment is presumed to have some substantive effect such that it will not be found to be a meaningless act of housekeeping." *Clair v. Whittaker*, 557 S.W.2d 236, 240 (Mo. banc 1977).

In 1985, the General Assembly reenacted all of section 144.020, adding this sentence to subdivision 144.020.1(8):

In no event shall the rental or lease of boats and outboard motors be considered a sale, charge, or fee to, for or in *places of amusement, entertainment or recreation* nor shall any such rental or lease be subject to any tax imposed to, for, or in such *places of amusement, entertainment or recreation.*

H.B. 280, 1985 Mo. Laws 693, 697 (emphasis added). Subdivision 144.020.1(8)—within the very section the principal opinion focuses on—twice uses the phrase "places of amusement, entertainment or recreation" without mentioning "games" and "athletic events." The legislature has never recognized the category proposed by the principal opinion, but has recognized a category of "places of amusement, entertainment or recreation."

This principle that statutes should be construed harmoniously when they relate to the same subject matter is all the more compelling when the statutes are passed in the same legislative session. Moreover, when the same or similar words are used in different places within the same legislative act and relate to the same or similar subject matter, then the statutes are *in pari materia* and should be construed to achieve a harmonious interpretation of the statutes.

*State v. Knapp*, 843 S.W.2d 345, 347 (Mo. banc 1992) (internal quote marks and citations omitted); *see also Hagely v. Board of Educ. of Webster Groves Sch. Dist.*, 841 S.W.2d 663, 667 (Mo. banc 1992); *Marre v. Reed*, 775 S.W.2d 951, 953 (Mo. banc 1989). In subsection 144.020.1(8), the legislature—in the same act during the same 1985 session—drew the line that "places of amusement, entertainment or recreation" did not include "games" and "athletic events."

## C. 1992 Enactment of Section 144.041

Further evidence that the legislature treats "games" as a separate category is found in section 144.041, which refers solely to "games." The legislature enacted section 144.041 in 1992 in order to exempt admissions to the 1994 World Cup Soccer Tournament games. *S.B. 533, 1992 Mo. Laws 578.* Section 144.041 refers solely to "charges for admissions, as defined in section 144.010, to any of the games." Thus, the legislature created an exemption for "games" and did not mention "recreation" and "athletic events." The General Assembly in section 144.041 recognized that admissions to "games" alone were normally taxable.

## II. Legislative Adoption of Settled Judicial Interpretation

In Part II, the principal opinion claims that a long line of this Court's cases indicates the "tendency to mix and match" the terms of subdivision 144.020.1(2). Rather, these cases—which treat "places of amusement, entertainment or recreation" as a separate category from "games" and "athletic events"—reflect a settled judicial construction of the statute.

More than twenty years ago, this Court held: "[T]he statute [144.020.1(2)] plainly provides for a sales tax on receipts from amounts paid for admission to places of amusement, entertainment or recreation, *as well as* to games and athletic events." *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596, 599 (Mo. banc 1977) (emphasis added). This Court could not have been clearer that places of amusement, entertainment or recreation were a different category from games and athletic events. This Court then followed this distinction in at least the six cases cited by the principal opinion: *Moon Shadow, Inc. v. Director of Revenue*, 945 S.W.2d 436, 437 (Mo. banc 1997); *High Adventure Game Ranch, Inc. v. Director of Revenue*, 824 S.W.2d 905, 906 (Mo. banc 1992); *Fostaire Harbor, Inc. v. Director of Revenue*, 679 S.W.2d 272, 273 (Mo. banc 1984); *L & R Distrib. Co. v. Department of Revenue*, 648 S.W.2d 91, 95 (Mo. banc 1983); *Spudich v. Director of Revenue*, 745 S.W.2d 677, 680 (Mo. banc 1988); *Blue Springs Bowl*, 551 S.W.2d at 599. Since subdivision 144.020.1(2) was originally enacted, this Court has consistently interpreted it as providing alternative categories.

Construction of a statute by this Court becomes part of the statute as if it had been amended by the legislature. *Dow Chemical*, 834 S.W.2d at 745. Where the legislature, after a statute has received settled judicial construction by the courts of last resort, reenacts the statute, or carries it over without change, it will be presumed that the legislature knew of and adopted the construction. *Blue Springs Bowl*, 551 S.W.2d at 600–01; *Dow Chemical*, 834 S.W.2d at 742; *Roy F. Stamm Elec. Co. v. Hamilton–Brown Shoe Co.*, 350 Mo. 1178, 171 S.W.2d 580, 583 (1943).

In this case there is more than a presumption that the legislature adopted the judicial construction. As outlined in section I.B above, the legislature in 1985 enacted the category "amusement, entertainment or recreation" without mentioning "games and athletic events." *See section 144.020.1(8).*

The principal opinion seeks to change the accepted judicial construction of the statute by requiring that fees to or in a recreational business are taxable only if it also has games and athletic events. This Court cannot change the uniformly followed and legislatively adopted judicial construction of a statute.

> However we might construe these sections if they were now before us on first impression, it is sufficient to say that they are not incapable of the construction then judicially given them and legislatorially adopted. If at the time the law was enacted there was any room for doubt as to the legislative intent, it has long since disappeared in view of the legislative sanction given this construction under which the law has proved workable. If this sanction is removed, it should be by legislative rather than judicial intervention.

*Kansas City Pub. Serv. Co. v. Ranson*, 328 Mo. 524, 41 S.W.2d 169 (1931).

### III. Grammar and Conjunctions

In view of the statute's history and the accepted judicial construction, it is no mystery that "this Court has never focused on the manner in which conjunctions and commas are used" in this statute. *at* 812. Courts in this state are reluctant to construe the intent of the legislature based solely on punctuation and grammatical construction. *Abrams v. Ohio Pac. Exp.*, 819 S.W.2d 338, 340 (Mo. banc 1991). Even examined from a grammatical point of view, the statute does not read as the principal opinion suggests. In Part II, the principal opinion would rigidly restrict the word "and" in order to cluster "recreation" with "games" and "athletic events."

The legislature occasionally uses "and" and "or" interchangeably. "[I]t is certain 'or' is often interpreted to mean 'and' and vice versa, if the context shows that meaning was intended, or when, as said, an absurd consequence, or frustration of the object of the enactment, would otherwise follow." *Hurley v. Eidson*, 258 S.W.2d 607, 608–09 (Mo. banc 1953).

The context of subdivision 144.020.1(2) and 144.020.1(8) is clear from the statutory history and settled judicial interpretation. Thus, the "and" separating "games" from "athletic events" means that the terms are alternatives in a series.

The very next subsection of section 144.020 also provides context and demonstrates the absurd results of the principal opinion's interpretation of "and." Subdivision 144.020.1(3) imposes: "A tax . . . on all sales of electricity or electrical current, water and gas, natural or artificial . . ." Under the principal opinion's proposed strict reading of conjunctions, sales of "electricity" are subject to sales tax, but sales of "electrical current" are not—unless the sale also includes "water and gas." Clearly, the legislature intended these terms as alternatives, each subject to sales tax, just as it did in the preceding subdivision 144.020.1(2).

The principal opinion claims that "placement of commas within the clause" is critical, without explaining the effect on the meaning of the statute. The comma placement in this statute, in fact, supports the accepted construction of the statute: it contains a series within a series. The series "entertainment, amusement or recreation" is contained within the series of "places of . . ., games and athletic events." In both series, the legislature omitted a comma before the conjunction, which indicates that the three terms following "places of" are part of a single series.

### IV.

For all these reasons, I disagree with the principal opinion's conclusion in Part II. The plain language of the statute and the precedent of this Court demonstrate that subdivision 144.020.1(2) provides alternative taxable categories, and the issue in this case is whether Columbia Athletic Club is in one or more of them. *Blue Springs Bowl*, 551 S.W.2d at 596. Contrary to Part III of the principal opinion, I would hold that exercise is recreation, that CAC is a place of recreation, and thus that fees paid to it are taxable.

### A.

This Court's cases applying subdivision 144.020.1(2) have focused on the plain meaning of the terms of this statute. The term "recreation" is not defined in the sales tax law, so this Court has consistently given this term its plain and ordinary meaning as derived from the dictionary. *Moon Shadow*, 945 S.W.2d at 437; *St. Louis Country Club v. Administrative Hearing Comm'n*, 657 S.W.2d 614, 617 (Mo. banc 1983). In applying dictionary definitions, this Court has held that an activity is classified as "amusement, entertainment or recreation" if it is so "within normal contemplation" or if it would "normally be treated" as such. *Bally's Leman's Family Fun v. Director of Revenue*, 745 S.W.2d 683, 684 (Mo. banc 1988); *Spudich*, 745 S.W.2d at 681; *Blue Springs Bowl*, 551 S.W.2d at 598; *L & R*, 529 S.W.2d at 378. Applying the dictionary definition of "recreation" to the exercise and other amenities that members pay for at CAC, I conclude that it is a place of recreation.

*Recreation* is defined as "refreshment of the strength and spirits after toil: DIVERSION, PLAY . . . a means of getting

diversion or entertainment." *Webster's Third New International Dictionary* 1899, cited in *Spudich*, 745 S.W.2d at 680.

*Refreshment* is "restoration of the strength, spirit, vigor, or liveliness, esp. after fatigue or depression." *Id.* at 1910.

*Diversion* means "2a. something that turns the mind from serious concerns or ordinary matters and relaxes or amuses: RELAXATION, AMUSEMENT, PASTIME ... b. the turning of the mind to pleasure: the act of receiving pleasure or amusement." *Id.* at 662.

When people pay to exercise, they do so for the diversion of refreshing the mind and body. By the dictionary definition, that is recreation. The Administrative Hearing Commission specifically found that exercise relaxes. The AHC found that some members join CAC to start an exercise program in order to overcome physical or mental illnesses such as depression or high blood pressure—in dictionary terms, to refresh their strength and spirits. Others join to build muscle and improve cardiovascular fitness. Indeed, "exercise" is defined in the dictionary as "bodily exertion for the sake of developing and maintaining physical fitness." *Id.* at 795. The satisfaction of improving one's strength, speed, endurance, body composition or agility is sufficient to qualify exercise at CAC as a pleasant or enjoyable diversion. The General Assembly used the broad word "recreation," which includes activities that require contracting muscles and breaking a sweat.

The principal opinion makes the subjective conclusion that the types of exercise that CAC facilitates are not recreational because they are not "fun" enough. According to the principal opinion, tennis is fun, but pushups are not. In fact, running on a treadmill may be invigorating and pleasurable to some, while others would find it boring and arduous. The principal opinion appears to marvel at the notion that anyone would join an athletic club for fun. This Court need not and should not make such a subjective evaluation; CAC members' enjoyment is demonstrated by their continued patronage.

When a taxpayer argued that hunters did not necessarily enjoy hunting at a private wild game ranch, this Court characterized their argument as one that "borders on the frivolous." *High Adventure*, 824 S.W.2d at 905. This Court discussed a federal district court case involving a "walkathon" attended by spectators. *Id.* at 906 n. 1. That court described the event and observed: "Marvelous to say, people seem to be entertained by the spectacle and are willing to pay for their entertainment." Nonetheless, the walkathon, like the wild game ranch, successfully attracted customers. Likewise, operating an athletic club is a business for profit that charges a fee to people who want to exercise there. Whether or not this type of exercise is this Court's idea of "fun" is irrelevant; the fact that CAC members patronize the athletic club is evidence of their enjoyment.

### B.

According to Part III of the principal opinion, exercise at CAC has a dual nature—health and recreation—and the health aspects predominate. CAC markets itself to the public as a facility ("Gold's Gym") where members can improve their health through physical exercise. The principal opinion reasons that if promoting health is the "primary" or "basic" "purpose" or "focus" of such a place, it is not a place of recreation.

There is no precedent for a "basic purpose" test in delimiting a place of recreation. As for a primary purpose test, this Court has rejected such a test in this area of law. The new test proposed by the principal opinion overrules *Spudich*, in which this Court rejected the argument "that Section 144.020.1(2) permits taxation only of fees paid within locations which are *primarily* or exclusively places of amusement." 745 S.W.2d at 680 (emphasis added). Further, in applying section 144.020.1(2), this Court looks to the nature of an activity, not the business owner's purpose for engaging in a particular business. *Fostaire*, 679 S.W.2d at 273.

The principal opinion treats health and recreation as mutually exclusive categories, as though the General Assembly had divided businesses into two groups: those that offer strenuous recreational activities and those that offer less strenuous recreational activi-

**816**

ties. In *Spudich*, this Court recognized that "a location or an activity can partake of a dual nature." 745 S.W.2d at 680. *Spudich* cited and discussed *Fostaire Harbor, Inc. v. Missouri Director of Revenue*, 679 S.W.2d 272 (Mo. banc 1984). In *Fostaire*, this Court held that "helicopter tours of historic sites can be educational, but they are also entertaining and recreational. These are not mutually exclusive." *Id.* at 273. The helicopter tours were held to be a "place of amusement." Likewise, many forms of recreation involve physical activity, and physical activity is healthy. If health and recreational aspects co-exist, "the place is no less a place of [recreation]." *Fostaire*, 679 S.W.2d at 273.

### C.

Having determined that exercise is recreation, the next step is to determine whether CAC is a "place of recreation." *Spudich*, 745 S.W.2d at 681–82. First, the athletic club is clearly a "place"—a building or locality used for a special purpose. *Moon Shadow*, 945 S.W.2d at 437.

In *Spudich*, this Court determined that a business is a place of amusement, entertainment or recreation if those activities comprise more than a de minimis portion of the business activities of the location. *Id.* at 682. In this case, this Court need not reexamine or apply the de minimis test because the Director and CAC agree that all or none of the membership fees are subject to tax. Because exercise is recreation, CAC is a place of recreation. By the precedents of this Court and the statutes of the legislature, the fees paid in or to CAC are subject to sales tax.

### VI.

I would affirm the decision of the Administrative Hearing Commission.