KANAKUK–KANAKOMO KAMPS, INC., Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. SC 81365.

Supreme Court of Missouri, En Banc.

Dec. 7, 1999.

Donald E. Woody, O.J. Taylor, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN C. HOLSTEIN, Judge.

■ Kanakuk–Kanakomo Kamps, Inc., (Kanakuk) appeals the decision of the Administrative Hearing Commission (AHC) finding it a place of "recreation, games and athletic events" within the meaning of sec. 144.020.1(2)[1] and, therefore, subject to sales tax. Since this case requires the construction of revenue laws, this Court has exclusive appellate jurisdiction. *Mo. Const. art. V, sec. 3.* The decision of the AHC is affirmed.

■ This Court's review of the AHC's decision is limited. The AHC's decision shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record. *Sec. 621.193; see also Mo. Const. art. V, sec. 18.* Moreover, the evidence is viewed in a light most favorable to the decision, together with all reasonable inferences that support it. *Shell Oil Co. v. Director of Revenue,* 732 S.W.2d 178, 180 (Mo. banc 1987). Viewed in this light, the facts are as follows:

Kanakuk is a Texas corporation with a principal place of business in Branson, Missouri. Kanakuk operates five summer camps in Taney and Stone Counties for youths ranging from age 8 to 18. Both boys and girls attend the camps, although they stay in segregated quarters on opposite sides of the facilities. Approximately 9,500 campers stay at Kanakuk each summer. Each can sign up for stays of 7, 14, or 26 days for which all but a few underprivileged children pay a tuition fee.[2] The camps offer children athletic activities and attempt to inculcate Christian faith and

---

1. All statutory citations are to RSMo 1994.

2. Even though meals and lodging are provided, no claim is made by the director of revenue that the tuition is taxable on that basis.

values at the same time.[3] The activities Kanakuk offers include: football, soccer, basketball, baseball, tennis, kayaking, archery, fishing, golf, karate, mountain biking, riflery, track and field, volleyball, weight training, wilderness camping, wrestling, gymnastics, cheerleading, dance, fitness and nutrition, nature and leather craft activities, water slides, the blob,[4] water zipline,[5] jet ski, water trolley, canoeing, diving, sailing, swimming, wind surfing, frisbee, ultimate frisbee, frisbee golf, aerial tennis, cross country, adventure games, wall climbing, juggling, rappelling, ropes, challenge courses, pottery, crafts, barn swing, warball, musical and dramatic presentations, putt-putt, and washers.[6]

These activities are tightly scheduled and highly structured. Campers get to choose a sport that becomes their specialty activity, such as football, soccer, or basketball. The older children spend more time engaging in this specialty activity due to increased ability to concentrate. In addition to this "major" sport, children may participate in sessions focusing on "minor" events as well as some free time to select from a number of activities of their choosing with instructor supervision. Each of the activities at Kanakuk is designed to teach Christian principles in addition to improving athletic skills. In the evening, more time is set aside for Christian teaching in addition to the scheduled morning and evening devotional periods.

Kanakuk instructors and counselors are typically student athletes in college or have just completed high school. The camp seeks to hire staff with athletic abilities, and admits it cannot really use employees lacking athletic abilities. Kanakuk insists that each of them be a committed Christian. However, the greatest emphasis is on athletic abilities and experience. Since the staff eats, sleeps, and works around and with children, Kanakuk tries to employ people who also love children. Instructors are provided with clinic handbooks for each specialty sport, which outline drills and techniques to practice the various sports, daily Bible verses, and allocate time to specific drills, competition, or exercise.

 Section 144.020.1(2) imposes sales tax on fees paid in or to any place of "amusement, entertainment or recreation, games and athletic events." Laws imposing taxes are to be strictly construed, and so the right to tax must be conferred by plain language, for it will not be extended by implication. *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596, 599 (Mo. banc 1977). The plain language of the statute makes it clear that Kanakuk, if it is to be taxed, must be a place of "recreation, games and athletic events." Where there is uncertainty as to the application of these statutory words, this Court's recent decision in *Columbia Athletic Club v. Director of Revenue,* 961 S.W.2d 806 (Mo. banc 1998), offers guidance.

> [I]n the context of section 144.020.1(2), a place of recreation is a building or locality that has as its special purpose, the facilitation of diversion or entertainment. The focus of the analysis, when applying section 144.020.1(2), is necessarily on that special purpose, or more accurately, on the *primary purpose* of the facility involved. If the primary purpose of the facility is to facilitate diversion or entertainment, then the facility is a place of recreation and is subject to assessment of sales tax....

*Id.* at 809–10 (emphasis original). There is no uncertainty as to the applicability of the statutory language to the activities here and, thus, no real need to engage in a painstaking effort to discern the facilities' primary purpose. Kanakuk fails to show

---

3. No claim is made that Kanakuk is entitled to a religious exemption.

4. A large inflated rubber object from which youngsters jump into the water.

5. An activity in which children ride downhill while attached to a wire.

6. A game played by throwing washers into a hole.

how its activities are outside the statutory taxing language even under the "primary purpose" test.

█ In seeking to determine the primary purpose of the athletic club's facility in *Columbia Athletic Club*, this Court identified the dual nature of exercise. *Id.* at 810. Specifically, since the fitness center facilitated exercise, this Court had to determine whether exercise, having both recreational and health-related aspects, can be considered recreation under sec. 144.020.1(2). *Id.* In ascertaining the primary purpose of a facility displaying a dual nature, one recreational and one non-recreational, a court must consider how the facility is viewed within normal contemplation. *Id.* Clearly, this requires an objective analysis of the nature of a facility. The Court discounted the subjective reasons any individual may have for using a facility. *Id. Columbia Athletic Club* recognized that certain sports are "commonly viewed" or "traditionally considered" recreational activities. Among these were racquetball, tennis, swimming, and basketball. *Id.* at 810–11.

Kanakuk does not dispute that the games and sports engaged in by campers at its facilities are commonly viewed as recreational. Viewed objectively, that should be sufficient to support the AHC's findings that the sports activities are recreational. However, in its point relied on, Kanakuk asserts it is not recreational because its primary purpose is "training, instruction and lessons in sports activities."

Exhibits in the record include the list of sports and activities offered at the camps, as listed above. In these lists, no mention is made of instruction or lessons. Other exhibits include promotional literature that repeatedly refer to the camps as places that have "perfected the art of having fun," as places "to get away from all the outside pressures and just concentrate on getting to know God and having a great time," as places to "take it easy in one of our sailboats or on a pair of water skis," and where "bunkmates and two fantastic counselors [ ] are ready and waiting to show you the time of your life." Youngsters are invited to "try [their] hand[s] at wind surfing, slalom skiing, or rappelling." The words of these documents do not suggest that extensive time is spent on instruction regarding the various sports activities. These exhibits are not only substantial evidence that support the findings of the AHC, they are compelling evidence that the purpose of the camps is recreation, games and athletics.

Another document, the 1997 baseball instructor's manual, reinforces the conclusion that the camps' primary purpose is not instructional. During a twenty-six day camp, the manual makes provision for eighteen days allocated to pitching, throwing, catching, and hitting baseballs and base running, as well as offensive and defensive drills that are all part of playing the game of baseball. Competitions are held on six other days referred to as "Game Days." The schedule shown in the manual indicates that nearly all the baseball activity periods are given over to actually practicing or competing in the game of baseball. Short periods are allocated for prayer, devotionals, and conditioning exercises. No mention is made of time scheduled for instruction apart from these activities. Indeed, neither the word "instruction" nor any of its synonyms appear in the baseball manual.

In addition, other manuals for various sports including football, basketball, and soccer are found in the record. Like the baseball manual, they break the sports periods up into activity segments as short as five minutes. While a few brief periods of instruction are reflected in these schedules, the overwhelming bulk of scheduled activities describe camper participation in various components of the sports, scrimmages, or in competition. If the primary purpose of the camps' facilities is instructional, it is well camouflaged in these manuals.

The only significant evidence suggesting that the primary purpose of the camps is athletic instruction is the self-serving and subjective claims of camp officials and a few parents who testified at the hearing. At minimum, such post-tax assessment declarations are suspect and may be rejected by the AHC. On this record, the AHC cannot be convicted of an abuse of discretion in regard to its factual determinations. *Mo. Const. art. V, sec. 18; sec. 621.193.*

Kanakuk's efforts to distinguish its activities, which include instruction in sports while practicing or competing in the various activities, from the sports themselves is also unpersuasive. Virtually every game involves intellectual, physical, and emotional aspects. When all components occur concurrently, the sports or games cannot be neatly divided into their component parts. No doubt, the skills of the campers in the various sports in which they "major" or "minor" are honed by the time spent in practice, the competitions in which they participate, and the tips given them by the experienced instructors. Indeed, the camps are designed to pepper the sports activities with instruction in how to improve the campers' spiritual life, sportsmanship, and physical abilities. However, the presence or absence of skilled coaching during the performance of sports activities does not change the nature or purpose of the camps. Coaching may change the skill level of the participants but, by itself, it does not change the primary purpose of the activities from athletic to academic.

This case differs from *Columbia Athletic Club* in one important respect. There, this Court examined the record and found "virtually no evidence to refute [taxpayer's] proof that the primary focus of" the facility was not recreational. *Id.* at 810. Here, that is not the case. In the case at bar, substantial, if not overwhelming, evidence establishes that the camps are places of recreation. The AHC concluded the facility was recreational and taxable under section 144.020.1(2). Deference is owed to the AHC's factual determination, and this Court is unable to say, as the statute requires for reversal, that the AHC findings in this regard are unsupported by competent and substantial evidence upon the whole record.

Kanakuk also argues that by reason of the director's regulations, fees for "lessons" are not subject to sales tax. 12 CSR 10–3.176(12). As noted above, there is substantial evidence that the primary purpose of Kanakuk's facilities is recreational. That makes the activity taxable under section 144.020.1(2) regardless of the regulation. A regulation that is beyond the scope of the statute is a nullity. *Hearst Corp. v. Director of Revenue,* 779 S.W.2d 557, 558–59 (Mo. banc 1989).

The decision of the AHC is affirmed.

LIMBAUGH, COVINGTON, WHITE and WOLFF, JJ., and AHRENS, Sp.J., concur; PRICE, C.J., concurs in result in separate opinion filed; WOLFF, J., concurs in opinion of PRICE, C.J. BENTON, J., not participating.

WILLIAM RAY PRICE, Jr., Chief Justice, concurring in result.

I concur with the result reached by the majority opinion. I cannot agree with its rationale that is based upon *Columbia Athletic Club v. Director of Revenue,* 961 S.W.2d 806 (Mo. banc 1998). As pointed out by Judge Benton in his dissenting opinion in *Columbia Athletic Club, Id.* at 811, the analysis in that case is flawed in a number of respects, particularly in its attempt to distinguish a primary purpose between exercise and recreation. The majority decision here highlights the folly of such an approach where children attending a summer religious and sports camp are taxed while adults "enjoying" their daily workouts are not.