**CENTRAL HARDWARE COMPANY, INC. and Budget Rent–A–Car of St. Louis, Inc., Appellants,**

v.

**DIRECTOR OF REVENUE, STATE of Missouri, Respondent.**

No. 76654.

Supreme Court of Missouri, En Banc.

Nov. 22, 1994.

Rehearing Denied Dec. 20, 1994.

Richard A. King, Deborah A. Polk, Kansas City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gretchen Garrison, Asst. Atty. Gen., Jefferson City, for respondent.

PRICE, Judge.

Central Hardware Company, Inc., (Central) and Budget Rent-a-Car of St. Louis, Inc., (Budget) assert they are entitled to a refund of the sales tax paid on the percentage of their credit sales they paid as fees to credit card companies. They claim these fees are "charges incident to the extension of credit" and statutorily excluded from the definition of "gross receipts" in § 144.010.1(3), RSMo 1986. Alternatively, they argue that neither Central nor Budget received the fees, and the fees are not part of gross receipts. The Administrative Hearing Commission (AHC) rejected these arguments, and we affirm. We hold that Central and Budget must pay sales tax on the full purchase price paid by their customers.

■ This Court has exclusive jurisdiction to construe state revenue laws. *Mo. Const.* art. V, § 3. This Court must affirm the decision of the AHC if it is supported by the law and competent and substantial evidence on the whole record. *House of Lloyd, Inc. v. Director of Revenue,* 824 S.W.2d 914, 916 (Mo. banc 1992).

## I.

Central and Budget are engaged in retail sales and rentals, respectively. They accept cash, checks, or credit card charges in payment. For all modes of payment, they charge the same price and collect sales tax from their customers on that price. The credit card drafts make no indication of any charge made to the customer in connection with the use of the credit card. Central and Budget accept credit cards to provide better service, increase sales volume and compete with other businesses.

Central and Budget have agreements with the various credit card companies. These agreements obligate the credit card companies to reimburse Central and Budget for the charges their cardholders make. Thus, Central and Budget bear little or no risk of nonpayment. The agreements also provide that Central and Budget shall pay fees, determined as a specified percentage of credit card sales, to the credit card companies for their services.[1] These fees are to compensate the credit card companies for risk of loss and processing costs.

At the time of sale, Central and Budget receive from their customers a credit card draft. They submit the drafts to the credit card companies, who credit special bank accounts set up for that purpose for the full purchase price of the cardholders' purchases and debit the accounts for the fees. Sometimes, the credits are to and the debits are from separate accounts. On its books, Budget treated its credit card fees as expenses.

Central and Budget filed applications for refund/credit and amended returns for sales taxes paid. The Director denied the claims.

## II.

■ The Missouri sales tax law,[2] as amended in 1965, is a gross receipts tax imposed upon the seller. *Farm and Home*

---

1. The fees ranged from slightly over one percent to five percent of the selling price.

2. §§ 144.010–144.510, RSMo 1986.

*Savings Association v. Spradling,* 538 S.W.2d 313, 316 (Mo.1976); *Fabick and Company v. Schaffner,* 492 S.W.2d 737, 743 (Mo. 1973); *Virden v. Schaffner,* 496 S.W.2d 846, 848 (Mo.1973); appeal dismissed, 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973).

Section 144.010.1(3) defines "gross receipts" as:

the total amount of the sale price of the sales at retail including any services other than charges incident to the extension of credit that are a part of such sales made by the businesses herein referred to, capable of being valued in money, whether received in money or otherwise; .... In determining any tax due under sections 144.010 to 144.510 on the gross receipts, charges incident to the extension of credit shall be specifically exempted. For the purposes of sections 144.010 to 144.510 the total amount of the sale price above mentioned shall be deemed to be the amount received....

"Sale at retail" is defined as:

any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption ... for a valuable consideration....

§ 144.010.1(8), RSMo 1986. In this case, the sales at retail occurred between Central and Budget and their customers. Thus, these are the transactions upon which the gross receipts are based and upon which the sales tax should be calculated.

### III.

First, Central and Budget contend they should not be required to pay sales tax on the credit card fees because the fees are "charges incident to the extension of credit." They claim this is true because it would have been impossible for them to permit credit sales without incurring these expenses. However, Central's and Budget's argument fails because it confuses the term "charges" with expenses.

■ Neither Central nor Budget made an express charge to their credit card customers for using that form of payment. The credit card customers paid the identical price as did those customers who paid by cash or check. No charge was shown for payment by credit, and credit customers were charged sales tax on the full purchase price.

The fees paid by Central and Budget in connection with credit card sales were negotiated with the credit card companies as a flat percentage of the amount of credit sales and were not contingent upon the amount actually collected. The credit card companies both reimbursed Central and Budget relatively quickly, often within 24 hours, and assumed the risk of loss. Budget listed the fees as expenses on its books, not as a reduction in gross sales. In short, the fees paid were an expense paid by Budget and Central to the credit card companies and were not a charge to their customers. Section 144.010.1(3) excludes from gross receipts "charges" incident to the extension of credit, not "expenses" resulting therefrom. For a similar result under different facts and statutory language, see *Bing Construction Company of Nevada v. Nevada Department of Taxation,* 109 Nev. 275, 849 P.2d 302, 304 (1993).

Moreover, if Central's and Budget's contention is correct, the refund sought would rightly belong to their customers, not to Central and Budget. Central and Budget acknowledge that they collected the tax on the full purchase price without regard to the credit card fee they paid. Central and Budget have indicated that they have brought this claim on their own behalf and not on behalf of their customers. Therefore, any refund to them would be a windfall.

### IV.

Central and Budget argue, in the alternative, that the fees were not part of gross receipts because they never actually received the fees. They base this assertion on the fact that most of the agreements between Central and Budget and the credit card companies provide that the credit card companies will pay them the amount of the credit draft less the fees on a daily basis. This argument fails.

■ Central and Budget focus on the wrong transaction in calculating their gross

receipts. Gross receipts are calculated based upon the transactions between Central and Budget and their customers, not upon those between Central and Budget and the credit card companies. Between Central and Budget and their customers, the full price was recorded on the credit draft. There is no evidence that the customers of Central and Budget paid less than the full amount recorded to the credit card companies. The credit card companies accepted this amount on behalf of Central and Budget. They then merely exercised their contractual right to use the customers' payments to set off the fees owed to them by Central and Budget before crediting Central's and Budget's accounts with the balance. *See Adelstein v. Jefferson Bank and Trust Company*, 377 S.W.2d 247, 251 (Mo.1964); *Greenwood v. Bank of Illmo*, 782 S.W.2d 783, 786 (Mo.App. 1989).

The effect is the same as if the credit card companies paid Central and Budget the full amount and then separately charged them the fees. The fact that Central and Budget chose to pay the fees out of the proceeds of their sales did not decrease the amount of their gross receipts from those sales.

### V.

 Central and Budget cite two AHC cases and one court of appeals case in support of their position. The AHC cases, of course, are not from courts of law and are not precedential. All three are inapposite. In *The May Department Stores Company d.b.a. Famous–Barr Co.*, AHC Case No. RZ–83–2074, CCH Missouri Tax Reports para. 201–007, at 11,585 (1986), the AHC held that sales were to be taxed under the rate in effect at the time of sale and not the time of collection, but that taxation remained contingent upon collection. *Id.* at 11,595, 11,597. In *Schweig–Engel Company, Inc. v. Director of Revenue*, AHC Case No. 90–00291RS, CCH Missouri Tax Reports para. 201–570, at 13,542 (1992), the AHC found that selling installment contracts at a discount merely approximated the amount of money Schweig–Engel would not receive anyway if it were to hold on to the accounts. Because there is no sales tax liability on installments that are not paid, the discount did not constitute consideration for tax purposes. *Id.* at 13,544. Similarly, in *Golde's Department Stores, Inc. v. Director of Revenue*, 791 S.W.2d 478, 481 (Mo.App.1990), the court held that Golde's was entitled to a refund of overpaid sales tax when it changed its calculation of sales tax from one based on gross sales to one based on gross receipts, since it was not liable for taxes where the customer defaulted. The factual circumstances of these cases are sufficiently and obviously different from the routine credit card purchases involved here that they simply do not apply.

### VI.

The decision of the Administrative Hearing Commission is affirmed.

All concur.