**OLD WARSON COUNTRY CLUB, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. 78684.

Supreme Court of Missouri,
En Banc.

Nov. 19, 1996.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, for appellant.

John P. Barrie, Juan D. Keller, Carole Lewis Iles, St. Louis, for respondent.

HOLSTEIN, Chief Justice.

Old Warson Country Club (Old Warson) did not collect or remit sales tax on a special assessment for capital improvements paid by its members during 1992 and 1993. The Director of Revenue (director) determined that under § 144.020,[1] Old Warson was liable for sales tax on the capital improvements assessments in the amount of $131,225 plus interest and additions. On appeal, the Administrative Hearing Commission (AHC) found that Old Warson was not liable for the sales tax. The director appeals the AHC's decision. Because this case involves a construction of the revenue laws, this Court has jurisdiction. Mo. Const. art. V, § 3. The Court holds that assessments used solely for capital improvements and made against members of Old Warson who obtain something other than the right to enjoy the use of the facilities are not subject to tax. Other assessments, even though used exclusively for capital improvements, are subject to the tax. The decision of the AHC is affirmed in part and reversed and remanded in part.

### I.

Old Warson is a not-for-profit corporation operating a golf course, club house and other recreational facilities and activities for its members. Old Warson has six classes of members. However, the capital improvements assessment program only applied to four classes of members: active members, senior members, surviving spouse members, and emeritus members. Two other classes of membership exist, junior and non-resident.

Active members are issued a membership certificate, similar to a stock certificate, representing their equity interest in the club. Active members pay dues and assessments as fixed by the board of directors under the bylaws. They have full use of the club's facilities. In addition, they may vote on all matters submitted to the membership and are entitled to hold any official position in the club.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

An active member may become a senior member by transferring to senior membership after age 72. Under the bylaws, senior members pay two-thirds of dues and assessments paid by active members. Senior members retain all privileges of active members, including the right to vote and hold an official position in the club. In addition, senior members retain their equity in the club.

The third class subject to the assessment were surviving spouse members. This class of members consists of the spouse of a deceased active, senior or emeritus member elected to that status by the club. A surviving spouse member receives by transfer the equity held by his or her spouse. Surviving spouse members pay two-thirds of the dues and assessments paid by active members. A surviving spouse member has all the privileges of an active member except the right to vote or hold an official position in the club.

The fourth class subject to the assessment were the emeritus members. Senior members and qualified surviving spouses may apply for transfer to emeritus membership. The transferring member receives a sum equal to his or her equity in the club upon surrender of his or her certificate of membership. Emeritus members retain no right to vote or hold an official position in the club.

Members pay initiation fees and then monthly dues set by the board. Old Warson designates part of the initiation fees paid by members as capital stock on its audited financial statements, representing members' equity interest. When a member holding equity in the club dies or terminates membership, Old Warson pays the estate or the member for their equity interest.

During 1992 and 1993, Old Warson paid sales tax on all monthly dues collected from all classes of members.

In the spring of 1992, Old Warson's board of directors proposed a $2,455,000 capital improvement program. All expenditures used were for repair or renovation of existing facilities or for reduction of capital debt. The capital improvement program was funded by an assessment against the four classes of members noted above. Active members were assessed $6,000, senior and surviving spouse members $4,000, and emeritus members $2,000. The assessment was payable in two equal installments due in August 1992 and August 1993. Any member not paying the assessment would be immediately suspended from using club facilities and would be expelled. Old Warson did not use any monthly dues for capital improvements. By contrast, the assessments were used solely to pay for the capital improvement program.

One-third of the assessment paid by each member was refundable by the club upon termination of membership. On Old Warson's audited financial statements, both the refundable and non-refundable portions of the capital assessment were recorded as additions to "members' equity." In contrast, monthly dues were reflected on the financial statements as "revenues."

Applicable sales taxes were paid on all personal property purchased in connection with the capital improvement program. No sales taxes were collected or remitted on the capital improvements assessments paid by any class of members.

## II.

Section 144.020 imposes a sales tax. It provides:

A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:

. . . .

(2) A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events. . . .

Based on the plain language of § 144.020, for the capital improvements assessments to be subject to sales tax, two requirements must be satisfied: (1) the capital improvements assessments must constitute "fees paid to, or in a place of amusement, entertainment or recreation" and (2) Old Warson must be a "seller" engaged in "the business of . . . rendering a taxable service at retail in this state."

■ The director argues that under the plain meaning of the words used in the statute, all capital improvements assessments are subject to sales tax. The director is correct that any assessment by Old Warson against its members would constitute a "fee" or "charge" paid to or in a place of entertainment or recreation. Moreover, as defined by statute, Old Warson is a "seller" in the "business" of rendering services at retail to its members and their guests. Section 144.010.1(2), (8), (9). The director would end the inquiry there and assess the tax. However, an important question remains.

■ In making capital improvement assessments, was Old Warson "rendering a taxable service at retail"? Section 144.020.1. Not every charge exacted from members of a social or recreational organization is for goods or services. Loans to the organization, fees paid for legal or equitable ownership rights, and fees paid for the right to participate in the operation and control of the organization are not paid in exchange for goods or services. At a minimum, some ambiguity exists in the statute as to whether such charges are subject to sales tax. An ambiguity in a statute imposing a tax must be resolved in favor of the taxpayer. *Delta Air Lines, Inc. v. Director of Revenue*, 908 S.W.2d 353, 356 (Mo. Banc 1995). At the same time, it has been held by this Court that under the plain meaning of § 144.020, charges which relate to the right to enjoy the use of the club facilities are for services and subject to sales tax. *St. Louis Country Club v. Admin. Hearing Comm'n*, 657 S.W.2d 614, 617 (Mo. banc 1983).

The department of revenue's regulations acknowledge the difference between those charges which relate to the use of a not-for-profit organization's facilities and charges paid for other purposes:

Amounts paid in or to a not-for-profit organization by members for the sole purpose of obtaining initial membership rights to participate in the ownership, operation and control of the club are not subject to tax. All amounts periodically paid in or to a not-for-profit organization by members for any purpose other than obtaining initial membership rights are a business activity and are subject to tax. All operating assessments or operating fees are taxable. Any other assessment or fee charged by an existing club solely to build or create a new place of amusement or a real property addition to a place of amusement is not a fee in or to a place of amusement and is not subject to sales tax.

*12 C.S.R. 10–3.048(3).* The above regulation covers initial assessments, periodic fees, operating assessments and assessments related to new facilities. The regulation is silent as to one-time assessments used solely for capital improvements. The regulation does not resolve the question of whether the capital improvement assessments were for the use of the club's facilities or for some other purpose. In making that determination, each class of members must be considered separately.

### III.

■ Active and senior members have a significant ownership interest in the club. Old Warson's active and senior members hold certificates of membership in the not-for-profit corporation. Like stock, the membership certificate is an equity instrument, and it represents an ownership interest equal to all others holding such instruments. Only these two classes of members have the right to control the corporation by voting on directors and other matters submitted for membership approval and by holding official positions in the club. With respect to active and senior members, the capital improvements assessment was an equity transaction which increased the members' capital in their club. The assessments were to improve the value of their membership assets, separate and apart from any payment of operating expenses related to the receipt of some service.

Like active and senior members, surviving spouse members have an equity ownership interest in the club, albeit more limited. Surviving spouse members receive by transfer whatever equitable ownership interest was held by their spouses. However, they do not have the right to vote or hold an official position in the club. Despite their name, those holding a surviving spouse mem-

bership are not actually "members" of the corporation under the general not-for-profit corporation law of Missouri. Section 355.066(21). Even though a surviving spouse member has no right to vote, they stand on an equal footing with active and senior members under the terms of Old Warson's bylaws, which provide that the surviving spouse member "receive[s] by transfer the equity and any debt instrument held by his or her spouse." This transfer of equity interest indicates an intent by the parties that the surviving spouse member retains an equitable ownership interest equal to an active member, limited only in the right to vote and the right to serve as an officer of the club. As to those surviving spouse members who retain an equitable ownership interest in the club, capital assessments are nontaxable equity contributions.

Because only one-third of the capital improvement assessments against active, senior and surviving spouse members are refundable, the director characterizes these assessments as "partial equity," even though the full assessments are carried as membership equity on Old Warson's financial statement. The director's characterization is not quite correct. Old Warson's members may at any time dissolve their club, dispose of its assets and divide the net proceeds to individual members according to the equitable interest of each member. *See* §§ 355.661.3 *and* 355.691.1(7). An increase in the value of club assets not offset by debt necessarily increases the equity of active, senior and surviving spouse members having an equity interest. Their assessments were not paid merely in exchange for the right to use the club facilities.

■ The same cannot be said of the emeritus members or surviving spouses of emeritus members. Emeritus members lack sufficient indicia of ownership to characterize their capital assessment payments as equity contribution. Upon transfer to emeritus membership, the member surrenders his or her certificate of membership in exchange for a sum equal to his or her equity in the club and is no longer entitled to vote in the club. However, one-third of the assessment made to emeritus members is refundable. To the

extent of the right to refund, the emeritus member stands in the relationship of a creditor of the club and the charge is in the nature of a loan.

■ The nonrefundable portion of the payment poses a different question. For that payment emeritus members do not receive or retain any indicia of actual membership. They have no right to vote at membership meetings. They receive no equity ownership in the club. We can perceive of no rights received by emeritus members or surviving spouses of emeritus members other than the continued right to enjoy the use of Old Warson's facilities. Rather than actual members sharing expenses, they stand as purchasers at retail of the use of the club's facilities and the club's services. Such nonrefundable payments are a taxable fee for service.

## CONCLUSION

We hold that nonrefundable contributions of emeritus members and surviving spouses of emeritus members were fees paid in exchange for services. As such, those contributions were subject to sales tax. That portion of the AHC's decision is reversed and remanded with directions to enter a sales tax in the amount of two-thirds of the capital improvements assessments made against emeritus members. With respect to active, senior and surviving spouse members, their contributions were not subject to sales tax. That portion of the decision is affirmed.

PRICE and WHITE, JJ., and GUM, Senior Judge, concur.

ROBERTSON, J., concurs in result in part and dissents in part in separate opinion filed.

LIMBAUGH and COVINGTON, JJ., concur in opinion of ROBERTSON, J.

BENTON, J., not sitting.

ROBERTSON, Judge, concurring in result in part and dissenting in part.

The principal opinion concludes that the Old Warson Country Club (the Club) owes no sales tax on capital improvement assessments paid by members who maintain an equity interest in the Club. For emeritus

members who no longer maintain an equity interest, however, the Club owes the state sales tax.

As I read the principal opinion, a payment by a Club member for which the member receives something other than recreational services is not subject to sales tax. Thus, the principal opinion holds that capital improvement assessment payments that result in a member receiving an equity interest in the Club or the ability to vote on issues relating to the management of the Club are not subject to sales tax.

The principal opinion's analysis is consistent with the taxing scheme erected in section 144.020, RSMo 1994. Unlike the principal opinion, however, I believe that in measuring the sales tax consequences of capital improvement assessments for all recreational clubs, the same something-other-than-payment-for-recreational-services analysis the principal opinion employs results in no Missouri sales tax liability even for emeritus members of the Club. This result is more consistent with the regulations of the Department of Revenue, conforms with the factual determinations of the Administrative Hearing Commission, and avoids double sales tax liability in every instance.

The Administrative Hearing Commission found that the Club's leadership designed its approximately $2.5 million capital improvement assessment program to accomplish the following:

Living Room: $200,000

Two new rugs with borders, drapes and curtains, reupholstery and refinishing, new chairs, tables, lamps and accent pieces, painting and wallcovering.

Main Dining Room: $120,000

Acoustical material ceilings and walls, carpeting, draperies, reupholstery chairs, new accent pieces, painting and wallcovering.

Eagle's Nest (an adjunct to the dining room): $115,000

Recessed lights, new chandeliers, new chairs, carpeting, draperies, accessories, painting and wallcovering.

Trophy Room: $60,000

Installed old chandeliers from Eagle's Nest, improved entry way and wall shelves, new draperies, trophy case, reupholstering chairs, accessories, replacing two tables.

Entry Vestibules and Loggia: $48,000

Chandeliers, paintings, accent pieces, refinishing and reupholstering.

Eagle's Nest Restrooms: $12,000

Resurfacing walls, new partitions, painting, wallcovering and accessories.

Sales tax on Purchases of Property; Contingency for Decorators: $45,000

Locker Rooms: $110,000

New lockers, vanities, sinks, mirrors, carpeting, lighting, painting, some new furniture in ladies' locker room. Painting and redecorating in boys' and girls' locker rooms.

Men's Restroom off Loggia: $10,000

Widening doorway and converting restroom for full handicap usage, redecorating and painting.

Trophy Room South Entry: $20,000

Screening off men's locker room, opening area for corridor, new lighting, painting and wallcovering.

Trophy Room Kitchen: $30,000

Replacing hot service equipment, improving service area and screening part (sic) extending into Trophy Room.

Main Kitchen: $55,000

Installing combination ovens, tilt kettle, steam table, freezer, and replacing silver burnisher.

Mechanical Systems: $140,000

Reconditioning and upgrading heating and cooling system, replacing one hot water boiler.

Brick Patio and Walks: $45,000

Relaying patio and walks in sand and replacing damaged bricks

Outdoor Lighting: $20,000

Raising existing fixtures and increasing brightness, improving lighting on walkway to locker rooms

Elevator: $125,000

\* \* \* \* \* \*

Replacing and Rebuilding Greens: $400,-000

Mapping contours of existing greens, excavating to depth of nineteen inches, installing drains across bottom, rebuilding with special materials and soils in accordance with USGA standards, seeding with bent grass.

Supplemental Course Work: $110,000

Enhancing areas around greens, improving irrigation system, repairing course damage from construction equipment, proving [sic] covers for greens, repairing and repaving existing cart paths.

New Maintenance Building: $150,000

To store equipment under shelter and to bring club into compliance with government environmental and safety standards.

Creek Erosion Control: $50,000

In 1990, flooding in a creek that runs through the golf course washed out retaining walls, two bridges, and three of the course's golf cart crossings. To stop erosion in the creek bed, Old Warson installed a gabion wall, which is a wire mesh filled with rocks and anchored onto the side of the creek.

Contingency: $40,000

[Capital Debt Retirement: $550,000]

The AHC found that the Club completed the capital improvements within the budget.

As the principal opinion reports, Club members paid varying amounts for capital assessments depending on their membership status. The Club designated one-third of the capital improvement assessments paid as equity payable upon termination of membership. Only emeritus members did not share in the return of equity or receive a bookkeeping entry on the Club's books showing an equity interest.

Missouri imposes sales tax "upon all sellers for the privilege of engaging in the business of . . . rendering taxable service at retail in this state."[1] For taxable services, "[a] tax equivalent to four percent of the amount paid [is due] for admission . . ., or fees paid to, or

in any place of amusement, entertainment or recreation, games and athletic events. . . ."[2]

I believe these statutory provisions create a link between the fee or charge paid and the purposes for which they are paid. Sales tax is due only where the fee or charge paid is paid for a taxable service at retail.

The principal opinion says that the question at the fulcrum of this case is whether the Club is rendering taxable service at retail generally. Respectfully, I suggest that the question framed by the principal opinion is incomplete. It is incomplete because it either assumes that all fees paid to the Club are in return for the Club rendering taxable services at retail or it believes that no such linkage between the fee and the taxable service is necessary.

I submit that the more accurate statement of the issue is whether the Club is rendering a taxable service at retail in return for the capital improvement assessment the members pay. In answering this question, I acknowledge that the record supports a conclusion that the payment of the assessment permits a member to continue to pay monthly dues to use the Club facilities. It does not necessarily follow, however, that payment of the assessment is the necessary quid pro quo for the Club rendering taxable service at retail to the member.

The Director recognizes a difference between monthly dues and initiation fees in her regulations. It appears that that difference is founded on an understanding that there must be a connection between the fee charged and the rendering of taxable services at retail.

Amounts paid in or to a not-for-profit organization by members for the sole purpose of obtaining initial membership rights to participate in ownership, operation and control of the club are not subject to tax. All amounts periodically paid in or to a not-for-profit organization by members for any purpose other than obtaining initial membership rights are a business activity and are subject to tax. All operating assessments or operating fees are taxable.

1. Section 144.020.1, RSMo 1994.

2. Section 144.020.1(2), RSMo 1994.

Any other assessment or fee charged by an existing club solely to build or create a new place of amusement or real property addition to a place of amusement is not a fee in or to a place of amusement and is not subject to sales tax.[3]

The principal opinion also depends on the need for linkage between a fee or charge paid and the provision of recreational services rendered as a condition of sales tax liability. This is the only explanation I can find for the ownership/participate-in-management-based distinction it adopts. But if the necessary linkage is broken for a purchase of equity or the right to vote on management issues, it is surely broken as well for payments by members to purchase personal property and construction services.

The record in this case shows exactly how the Club anticipated spending the assessment. The members' assessment payments bought paint, wallpaper, draperies, furnishings, equipment, fencing, skilled and unskilled labor and a host of other improvements. The members did not purchase the opportunity to use the recreational facilities with their capital improvement assessment payments.

The record also shows that the Club paid sales tax on the purchases of personal property and taxable service it purchased with the members' capital improvement assessment payments. As to some (though not all) of the members' payments, the principal opinion results in double sales taxation of these purchases. Admittedly, this is a small sum. But its size does not render the legal issue unimportant.

For the reasons expressed, I concur with the principal opinion's conclusion that some members' capital improvement assessment payments are not subject to sales tax. Because I believe that *none of the members'* capital improvement assessment payments are subject to sales tax, I respectfully dissent from that portion of the majority opinion reaching a different result.

