**801 SKINKER BOULEVARD CORPORATION, et al.,**
Appellants,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. SC 92401.

Supreme Court of Missouri,
En Banc.

Jan. 8, 2013.

Opinion Modified on Court's Own
Motion Feb. 26, 2013.

**2**

Ira M. Berkowitz, Marvin J. Nodiff, Law Office of Marvin J. Nodiff PC, St. Louis, MO, for the Taxpayers.

Deputy Solicitor General, Jeremiah J. Morgan, Attorney General's Office, Jefferson City, MO, for the Director.

ZEL M. FISCHER, Judge.

801 Skinker Boulevard Corporation ("801"), Union Electric d/b/a Ameren UE Company n/k/a Ameren Missouri ("Ameren"), and Laclede Gas Company ("Laclede") (collectively "Taxpayers") petition for review of the Administrative Hearing Commission's ("Commission") denial of their request for a refund of sales tax, interest, attorney's fees, and costs, arguing that they are entitled to the exemption and refund of their state sales tax pursuant to § 144.030.2.[1] Ameren and Laclede argue that their claims should not have been denied because they were authorized to make the claims on behalf of 801 pursuant to § 144.190.2, RSMo Supp.2003, and would remit any taxes obtained on 801's behalf to 801.[2] This Court has jurisdiction pursuant to article V, sections 3 and 18, of

---

1. All statutory references are to RSMo Supp. 2011 unless otherwise noted.

2. The Commission decided Ameren and Laclede were not entitled to recover a sales tax refund because such a refund would constitute a "windfall" where the business is not required to refund the money to its customers. The Commission cited *Central Hardware Co., Inc. v. Dir. of Revenue*, 887 S.W.2d 593, 595 (Mo. banc 1994). *Central Hardware* involved facts where the sellers sought a refund of sales tax paid on the percentage of credit sales they paid as fees to credit card companies. *Id.* at 595–96. The fees paid by the sellers were an expense paid to the credit card companies and were not a charge to the sellers' customers, and their claim for a refund of the sales taxes paid were brought on their own behalf and not on behalf of their customers. *Id.* In this case, Ameren and Laclede have filed this claim for refund on behalf of 801 pursuant to limited powers of attorney solely for purposes of appeal, ensuring Ameren and Laclede will not retain any refund obtained on behalf of 801. The decision of the Commission also expressly states: "Because we are not authorized to apply principles of equity, we do not base our decision on this ground."

the Missouri Constitution. The decision of the Commission, sustaining the Director of Revenue's ("Director's") motion for summary decision and overruling 801's motion for summary decision, is reversed, and the Director is ordered to remit a full refund of the sales tax paid, plus interest at a rate of six percent annum.[3] The parties are directed to the procedures under §§ 136.315.3 and 536.087.3 for consideration of any award of attorneys' fees in this case.

### Procedural History and Facts

801 is a Delaware corporation that operates as a residential cooperative, consisting of members, all of whom own an exclusive right to occupy one of 39 residential units in the building in St. Louis, Missouri, owned by 801. 801 provides maintenance services to the units, common areas, and facilities, the cost of which is paid by its members through assessments. 801 sought a refund for sales taxes under § 144.030.2(23).

The refund request concerned state sales tax charged and paid on electric and natural gas utilities purchased from June 2006 through May 2009, used for the purpose of providing heating, cooling, lighting, hot water, and other services for the units, common areas, and facilities including hallways, lobbies, elevators, entrance ways, parking areas, generator, and fire pump. The common areas are on separate meters from the individual units, which have separate meters for each unit. While 801 is legally required to pay for the common area gas and electricity, each of the members are responsible for the cost of such

utilities in an amount consistent with their proportionate ownership share of 801.

801 filed for a refund of the 2008 sales tax on its Ameren and Laclede bills in the amount of $11,993.17. Ameren filed for a refund on behalf of 801 of the sales tax for 2006, 2007, and 2009 in the amount of $10,028.55. Laclede filed for a refund on behalf of 801 of the sales tax for 2006, 2007, and 2009 in the amount of $17,407.96. Ameren and Laclede's applications were denied by notice. Ameren's rate classification for the electricity purchased by 801 for the common areas was "3M Large General Service," a commercial rate. Laclede's rate classification for the natural gas purchased by 801 for the common areas was "C & I Class 3," a commercial rate.

Taxpayers timely filed their complaint with the Commission, alleging the utilities were purchased for domestic use by the individual owners and residents of 801 in accordance with § 144.030.2. Taxpayers filed their motion for summary decision and the Director filed a cross-motion for summary decision. On February 7, 2012, the Commission rendered its opinion, denying Taxpayers' request for a refund of sales tax, interest, attorney's fees, and costs. Taxpayers appealed.

### Standard of Review

"This Court reviews the decision of the [Administrative Hearing Commission] pursuant to section 621.189. Under section 621.193, RSMo 2000, the decision of the [Commission] is to be upheld when authorized by law and supported by competent and substantial evidence upon the record as a whole unless clearly contrary to the reasonable expectations of the Gen-

---

**3.** The Director argued, in a motion to modify the opinion, that §§ 32.068 and 32.069 apply to provide an interest rate on refunds different from the "six percent annum" argued applicable by taxpayers pursuant to

§ 621.050.2. However, because Director failed to make this argument at any time prior to submission of the case, it is deemed waived.

eral Assembly." *Street v. Dir. of Revenue,* 361 S.W.3d 355, 357 (Mo. banc 2012) (internal quotations and citations omitted). The Commission's interpretation of state revenue laws is reviewed *de novo. Custom Hardware Engineering & Consulting Inc. v. Dir. of Revenue,* 358 S.W.3d 54, 56 (Mo. banc 2012). The Commission's findings of fact will be upheld if the findings are supported by substantial evidence on the whole record. *Id.*

▮ Taxpayers bear the burden of demonstrating that they qualify for an exemption. *Brinker Missouri, Inc. v. Dir. of Revenue,* 319 S.W.3d 433, 436 (Mo. banc 2010). "Exemptions from taxation are to be strictly construed against the taxpayer and any doubt is resolved in favor of application of the tax." *Id.* "The primary rule in statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Street,* 361 S.W.3d at 357–58 (internal quotations and citations omitted). "In ascertaining legislative intent, the statute should be read *in pari materia* with related sections, and the taxing statutes should be construed in context with each other." *Id.* at 358.

## Analysis

Section 144.030.2 authorizes state and local sales and use tax exemptions if the qualifications of the statute have been met.[4]

4. Section 144.030.2(23) provides:

> 2. There are also specifically exempted from the provisions of the local sales tax law . . . :
> (23) Except as otherwise provided in section 144.032, all sales of metered water service, electricity, electrical current, natural, artificial or propane gas, wood, coal or home heating oil for domestic use and in any city not within a county, all sales of metered or unmetered water service for domestic use:
> (a) "Domestic use" means that portion of metered water service, electricity, electrical current, natural, artificial or propane gas, wood, coal or home heating oil, and in any city not within a county, metered or unmetered water service, which an individual occupant of a residential premises uses for nonbusiness, noncommercial or nonindustrial purposes. Utility service through a single or master meter for residential apartments or condominiums, including service for common areas and facilities and vacant units, shall be deemed to be for domestic use. Each seller shall establish and maintain a system whereby individual purchases are determined as exempt or nonexempt.
> (b) Regulated utility sellers shall determine whether individual purchases are exempt or nonexempt based upon the seller's utility service rate classifications as contained in tariffs on file with and approved by the Missouri public service commission. Sales and purchases made pursuant to the rate classification "residential" and sales to and purchases made by or on behalf of the occupants of residential apartments or condominiums through a single or master meter, including service for common areas and facilities and vacant units, shall be considered as sales made for domestic use and such sales shall be exempt from sales tax. Sellers shall charge sales tax upon the entire amount of purchases classified as nondomestic use. The seller's utility service rate classification and the provision of service thereunder shall be conclusive as to whether or not the utility must charge sales tax;
> (c) Each person making domestic use purchases of service or property and who uses any portion of the services or property so purchased for a nondomestic use shall, by the fifteenth day of the fourth month following the year of purchase, and without assessment, notice or demand, file a return and pay sales tax on that portion of nondomestic purchases. Each person making nondomestic purchases of services or property and who uses any portion of the services or property so purchased for domestic use, and each person making domestic purchases on behalf of occupants of residential apartments or condominiums through a single or master meter, including service

### Single or Master Meter

Taxpayers argue the Commission erred in overruling their motion for summary decision because the purchased utilities were for domestic use and the language of the statute regards utility service for common areas and facilities through "a single or master meter" for residential apartments or condominiums as exempt from the tax. The Commission's ruling states: "[801] qualifies for neither the residential rate classification, nor the single or master meter exemption."

 In determining statutory construction, this Court has said that "every word, clause, sentence, and provision of a statute must have effect." *Civil Service Comm'n of City of St. Louis v. Members of Bd. of Aldermen of City of St. Louis,* 92 S.W.3d 785, 788 (Mo. banc 2003) (internal quotations and citations omitted). "[I]t will be presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Hyde Park Housing P'ship v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993). While this Court has interpreted the word "or" as conjunctive and synonymous with the word "and" in cases where it becomes necessary to effect legislative intent or avoid producing an absurd result, "the ordinary interpretation given to the word 'or' is not as a conjunctive ... and it never means 'and' unless the context requires such construction." *Hawkins v. Hawkins,* 511 S.W.2d 811, 812 (Mo.1974) (internal quotations and citations omitted). "It should only be construed as 'and' only where necessary to give effect to the intention, and the substitution should not be made where such

construction would be inconsistent with the intent as shown by the whole context and the circumstances or unless its literal meaning renders the sense dubious." *Id.*

Here, the intent of the legislature may be gleaned by the plain language of the statute. The first sentence of § 144.030.2(23)(a) makes clear that, when an individual occupant in a residential premises uses a portion of purchased utility service for nonbusiness, noncommercial, or nonindustrial purposes, such utility service is determined to be for "domestic use" and is exempt from the state and local sales and use taxes. The second sentence of § 144.030.2(23)(a) extends such designation and exemption ("shall be deemed to be for domestic use") to any utility service, whether purchased "through a single or master meter for residential apartments or condominiums, including service for common areas and facilities and vacant units[.]" The second sentence clearly intends, by its language, to treat utility services, including those services for common areas, facilities, and vacant units purchased at apartment complexes and condominiums, as "for domestic use" regardless of whether they are purchased through a master meter *or* through a single and separate meter. If it were otherwise, then the General Assembly's use of the words "single" and "or" in the statute would be rendered superfluous.

"Master" is defined as "being a device or mechanism that controls the operation of another mechanism"; "being a mechanical part or a device that establishes a dimension, weight, or other standard[.]" Web-

---

for common areas and facilities and vacant units, under a nonresidential utility service rate classification may, between the first day of the first month and the fifteenth day of the fourth month following the year of purchase, apply for credit or refund to the director of revenue and the director shall give credit or make refund for taxes paid on the domestic use portion of the purchase. The person making such purchases on behalf of occupants of residential apartments or condominiums shall have standing to apply to the director of revenue for such credit or refund.

ster's 3rd International Dictionary 1390 (1976). "Single" is defined as "consisting of one as opposed to or in contrast to many"; "taken by itself apart from its group or constituency[.]" *Id.* at 2123. By using "single *or* master meter" in § 144.030.2(23)(a), the General Assembly demonstrated its intent that utilities purchased for residents in apartments or condominiums, including those utilities used in common areas and vacant units, be deemed to qualify for the exemption whether they are purchased through one "master" meter and then doled out to each resident or whether they are purchased through individual, "single" meters associated with each unit and area. Otherwise the tax exemption statute would grant sales and use tax exemptions deemed "domestic use" to apartment and condominium complexes solely on the basis that their method of purchasing utilities for "domestic use" is through a master meter. The purpose of the statute is not so limited.

■ The Commission reasoned that, because the utilities classed their sales of gas and electricity to the common areas as nonresidential and because the meters for the common areas are not on one meter used by all of the individual apartments, 801 did not qualify under the single or master meter exemption as embodied by § 144.030.2(23)(a). The Commission, reading the first two sentences of § 144.030.2(23)(a) together, decided "that the legislature, through its 1994 amendments to § 144.030.2(23), created a safe harbor in which, in its own words, domestic use is *deemed*—when the utility service is provided to the apartments or condominiums through a single or master meter." The Commission went on to point out that "deem," as defined in Black's Law Dictionary, 477 (9th ed.), means "to treat (something) as if 1) it were really something else; or 2) it has qualities it does not

have." The Commission interpreted the statute to intend that, if utilities and gas were purchased by apartments or condominiums, servicing all individual living units as well as common areas and facilities, through only one meter for the whole complex, then—and only then—the exemption under § 144.030.2(23) has been met.

However, that is not the interpretation supported by the language of the statute and this Court's rules of statutory construction. Section 144.030.2(23)(a) provides, in pertinent part: "[u]tility service through a single *or* master meter for residential apartments or condominiums, including service for common areas and facilities and vacant units, shall be deemed to be for domestic use." (Emphasis added). "The word 'or' is ordinarily used as a disjunctive to mean 'either' as 'either' this or that." *Norberg v. Montgomery*, 351 Mo. 180, 173 S.W.2d 387, 390 (1943).

The purpose of the statute is to provide sales and use tax exemption for utilities that are purchased for "domestic use," which the General Assembly has deemed to include those utilities purchased by residential apartments and condominiums for common areas, facilities, and vacant units. It is not purposed on providing such an exemption for utilities purchased solely through a "master meter." "The 1994 amendment [to section 144.030.2] basically provided a mechanism for avoiding assessments of sales tax paid on utilities purchased for domestic use by residential apartments and condominiums." *American Healthcare Management, Inc. v. Dir. of Revenue*, 984 S.W.2d 496, 499 (Mo. banc 1999). This reading gives full effect to the language of the statute as written by the General Assembly.

### "Domestic Use"

■ The Director argues that the plain language of § 144.030.2(23)(b) "establishes

that if the utility service rate classification is 'residential,' then the sales of electricity shall be for domestic use and exempt from sales tax" and that, "[c]onversely, those sales under the rate classification 'commercial,' as in this case, are nonexempt." However, this overlooks the remaining portion of § 144.030.2(23)(b) providing that "[s]ales and purchases made pursuant to the rate classification 'residential' *and sales to and purchases made by or on behalf of the occupants of residential apartments or condominiums* through a single or master meter, including service for common areas and facilities and vacant units, shall be considered as sales made for domestic use and such sales shall be exempt from sales tax." Section 144.030.2(23)(b) (emphasis added). Section 144.032.2(23)(c) states: "each person making domestic purchases on behalf of occupants of residential apartments or condominiums through a single or master meter, including service for common areas and facilities and vacant units, under a nonresidential utility service rate classification may ... apply for credit or refund to the director of revenue and the director shall give credit or make refund for taxes paid on the domestic use portion of the purchase."

Merely because, as here, the rate classifications were designated "commercial" is not definitive, because the statute provides that, beyond those sales and purchases classified "residential," any "sales and purchases made by or on behalf of occupants of residential apartments or condominiums through a single or master meter, including service for common areas and facilities and vacant units, *shall* be considered as sales made for domestic use and such sales *shall* be exempt from sales tax." The General Assembly went out of its way in the language of the statute to exempt the sale and purchase of utilities for common areas, facilities, and vacant units in apart-ment and condominium complexes, regardless of whether the seller classified it as "residential" or "commercial."

The seller in *Hyde Park* classified the apartments' utilities as residential. 850 S.W.2d at 83. This Court held that, under the amended statute, a seller's residential classification could be determinative for manner of use. *Id.* at 85. As this Court explained, "[a]fter the 1986 amendment, determining the manner of use of the electricity becomes important only when the electricity is purchased for domestic use *but is not purchased under a residential tariff." Id.* However, in *American Healthcare*, the sellers' rate classifications for some of the utilities sold to the nursing homes was nonresidential while others were classified as residential. 984 S.W.2d at 498. This Court acknowledged that in some cases there is no "legitimate explanation for these inconsistencies, other than the differing policies of their utility providers. Hence, exempting these nursing homes from sales tax on utilities under the domestic use exemption will help solve this inconsistent treatment." *Id.*

The only required result of the seller classifying the rate "commercial" is that "[t]he seller's utility service rate classification and the provision of service thereunder shall be conclusive as to whether or not *the utility must charge sales tax*[.]" Section 144.030.2(23)(b) (emphasis added). The plain language of this section requiring the utility to charge sales tax does not affect the ability of the purchaser of the utility from applying for and receiving a refund for the "domestic use" exemption, the procedure for which is provided in § 144.030.2(23)(c).

801 purchased its utilities through separate, "single" meters for residential apartments or condominiums, including service for common areas, facilities, and vacant

units. Therefore, such purchases "shall be deemed to be for domestic use." Section 144.030.2(23)(a). Although the utilities must charge sales tax on the utilities because they have a "commercial" rate classification, because these utilities were "purchases made by or on behalf of the occupants of residential apartments or condominiums through a single or master meter, including service for common areas and facilities and vacant units," 801's purchases of the utilities "shall be considered as sales made for domestic use and such sales shall be exempt from sales tax." Section 144.030.2(23)(b). Because 801 made "domestic purchases on behalf of occupants of residential apartments or condominiums through a single or master meter, including services for common areas and facilities and vacant units, under a nonresidential utility service rate classification," and because 801 timely applied for refund to the Director, the Director "shall give credit or make refund for taxes paid on the domestic use portion of the purchase." Section 144.030.2(23)(c).

Section 144.030.2(23)(a) provides that utilities purchased through single meters "shall be deemed to be for domestic use[,]" specifically including common areas, facilities, and vacant units. There is no need to parse out the percentage of use that qualifies as "residential" or "nondomestic." The statute demonstrates the General Assembly's willingness to treat such "nondomestic" portions, when purchased by apartments or condominiums for common areas, facilities, and vacant units, as though they were purchased for "domestic use."

## Conclusion

The language of § 144.030.2(23)(a) indicates utilities purchased for residential apartments or condominiums for common areas and facilities, "shall be deemed to be for domestic use" whether purchased through a single meter or through a master meter. 801 demonstrated that they purchased utility service for such residential apartments or condominiums through single meters, for use in common areas and facilities. 801's utility purchases are therefore deemed, by statute, to be for "domestic use" and, as such, are exempt from sales tax. The decision of the Commission is reversed, and the Director is ordered to remit a full refund of the sales tax paid, plus interest at a rate of six percent annum. The parties are directed to the procedures under §§ 136.315.3 and 536.087.3 for consideration of any award of attorneys' fees in this case.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, STITH and DRAPER, JJ., and RILEY, Sp.J., concur.

WILSON, J., not participating.