

# SUPREME COURT OF MISSOURI
## en banc

SADDLE AND SIRLOIN CLUB      )     *Opinion issued November 1, 2022*
OF KANSAS CITY,                )
                                          )
              Appellant,         )
                                          )
v.                               )     No. SC99453
                                          )
DIRECTOR OF REVENUE,         )
                                          )
             Respondent.     )

### PETITION FOR REVIEW OF A DECISION OF THE
### ADMINISTRATIVE HEARING COMMISSION
The Honorable Philip Prewitt, Commissioner

Saddle and Sirloin Club of Kansas City (the "Club") seeks review of the Administrative Hearing Commission's (the "Commission") decision that the Club owes sales tax on monthly membership dues paid by Club members because the dues are fees paid to a place of amusement, entertainment, or recreation pursuant to § 144.021.1.[1] This Court has jurisdiction pursuant to article V, § 3 of the Missouri Constitution. The Commission's decision is affirmed.

---

[1] All statutory references are to RSMo Supp. 2011, unless otherwise indicated.

**Facts and Procedural History**

The Club is a Kansas not-for-profit corporation authorized to do business in Missouri as a federal-tax-exempt entity.[2]  The Club's headquarters, and principal place of business, is Kansas City, Missouri.  The Club owns and maintains, at its headquarters, trail-ride facilities, boarding stables, riding arenas, shooting facilities, a clubhouse, and dining and party rooms.

From December 2003 through November 2006, and September 2009 through August 2012 (collectively, the "Period"), the Club collected and remitted Missouri sales tax, pursuant to § 144.021.1, on monthly membership dues collected from Club members and also on charges for meals and drinks sold to Club members.

During the Period, the Club had several membership levels, including: resident membership, non-resident membership, life membership, honorary membership, associate membership, senior membership, service membership, shooting sports membership, and premium senior membership.  Club members paid initiation fees, monthly membership dues, and monthly capital assessments to the Club.  The Club charged monthly membership dues based on metrics such as age and family status.  Resident members paid a higher initiation fee than non-resident members.  If a non-resident member becomes a resident, the member must pay the difference between the two fees.  Members pay additional sums to the Club to board and train horses; provide food during activities; and pay for shooting activities, swimming, golf, tennis and poker games.  From December 2003 to November

_____

[2] *See* I.R.C. § 501(c)(7).

2006, dues from voting members generated approximately $1.3 million and non-voting member dues generated approximately $52,000. For September 2009 through August 2012, dues from voting members generated approximately $1.7 million and non-voting member dues generated approximately $104,000. During the Period, the Club bylaws specified Club members could be expelled for failure to pay membership dues. Memberships are not transferable and cannot be sold or bequeathed.

The Club board of directors had the authority, in the 2009 Club bylaws, to eliminate or add levels of membership and specify voting rights. For most of the Period, all levels of membership had voting rights, except non-resident members, associate members, and shooting sports members. The Club could not sell real property without a vote by the members, but the members did not have an ownership interest in the Club. The Club's bylaws provided no member had any property right or interest in any property or assets of the Club. When a member resigned his or her membership, he or she did not receive a distribution or payment from the Club. Upon dissolution of the Club, members may vote to determine what happens to Club assets.

During the Period, the Club paid sales tax only on monthly membership dues, not capital assessments. The Club treated membership dues as "gross receipts" on its income tax returns. In October 2012, the Club submitted a tax-refund claim to the Missouri Department of Revenue (the "Department"). The Club claimed it erroneously collected and remitted sales tax on food and beverage sales and service charges thereon from September 2009 through August 2012. In October 2013, the Club submitted a tax-refund claim to the Department and claimed it erroneously collected and remitted sales tax on

monthly membership dues, food and beverage sales, and service charges thereon from December 2003 through November 2006. The Director gave a partial refund on a portion of each claim, specifically a portion of the food and beverage sales.

The Club filed two suits against the Department before the Commission, one addressing each tax-refund claim submitted to the Department. In each of these suits, the Club argued the Department should have: (1) fully refunded sales tax on amounts the Club charged its members for food, beverages, and related services charges; and (2) refunded sales tax on amounts the Club charged its members for monthly membership dues. After a hearing, the Commission determined the Club is not entitled to a refund on its monthly membership dues but was entitled to a full refund on the food and beverage sales.

The Club seeks this Court's review of the Commission's decision that the club was not entitled to a refund on monthly membership dues.

**Standard of Review**

"This Court will uphold the Commission's decision when it is authorized by law and supported by competent and substantial evidence upon the record as a whole unless clearly contrary to the reasonable expectations of the General Assembly." *New Garden Restaurant, Inc. v. Dir. of Revenue*, 471 S.W.3d 314, 317 (Mo. banc 2015) (internal quotations omitted); *see also* § 621.193, RSMo 2016. "The Commission's interpretation of state revenue laws is reviewed *de novo*." *801 Skinker Blvd. Corp. v. Dir. of Revenue*, 395 S.W.3d 1, 4 (Mo. banc 2013). "The Commission's findings of fact will be upheld if the findings are supported by substantial evidence on the whole record." *Id.*

4

A statute allowing a refund must be strictly construed against the taxpayer. *Ins. Co. of Pa. v. Dir. of Revenue & Dir. of Ins.*, 269 S.W.3d 32, 35 (Mo. banc 2008). Section 144.190.2, RSMo 2016, the applicable statute permitting tax refunds, provides, in relevant part:

> If any tax, penalty or interest has been paid more than once, or has been erroneously or illegally collected, or has been erroneously or illegally computed, such sum shall be credited on any taxes then due from the person legally obligated to remit the tax under chapter 144, and the balance, with interest as determined by section 32.065, shall be refunded to the person legally obligated to remit the tax[.]

In a proceeding before the Commission, the taxpayer has the burden to prove it is entitled to the refund unless one of the exceptions of § 621.050.2, RSMo 2016, applies.[3] *See Alberici Constructors, Inc. v. Dir. of Revenue*, 452 S.W.3d 632, 638 (Mo. banc 2015).

---

[3] Section 621.050.2, RSMo 2016, provides, in relevant part:
In any proceeding before the administrative hearing commission under this section the burden of proof shall be on the taxpayer except for the following issues, as to which the burden of proof shall be on the director of revenue:
(1) Whether the taxpayer has been guilty of fraud with attempt to evade tax;
(2) Whether the petitioner is liable as the transferee of property of a taxpayer (but not to show that the taxpayer was liable for the tax); and
(3) Whether the taxpayer is liable for any increase in a deficiency where such increase is asserted initially after the notice of deficiency was mailed and a protest filed, unless such increase in deficiency is the result of a change or correction of federal taxable income required to be reported[.]

**Analysis**

Section 144.020.1(2) provides:[4]

A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:

A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events[.]

The parties agree the Club provides recreational activities. The parties also agree monthly membership dues were paid, at least in part, for recreational activities. The Club argues, however, the monthly membership dues are not subject to sales tax because Club members received, in addition to recreation services, the right to participate in the operation and control of the Club and an increase in the value of their equitable interests in the Club.

This Court has held, under the plain meaning of § 144.020, charges that relate to the right to use club facilities and services are subject to sales tax. *St. Louis Country Club v. Admin. Hearing Comm'n of Mo.*, 657 S.W.2d 614, 617 (Mo. banc 1983). Pursuant to § 144.020.1(2), monthly membership dues are subject to sales tax if two requirements are satisfied: (1) the monthly membership dues must constitute fees paid to or in a place of amusement, entertainment or recreation; and (2) the Club must be a seller engaged in the business of selling tangible personal property or rendering a taxable service at retail in this

---

[4] The legislature subsequently amended § 144.020.1 in 2013, 2015, 2016, and 2019. These amendments, however, do not affect the issue of whether the Club is liable for sales tax at issue here. *See SW. Bell Tel. Co. v. Dir. of Revenue*, 78 S.W.3d 763, 766 n.5 (Mo. banc 2002) ("Tax consequences are governed by the law in effect at the time of the transaction in question."), *overruled on other grounds by IBM Corp. v. Dir. of Revenue*, 491 S.W.3d 535, 541 (Mo. banc 2016).

6

state. *See Old Warson Country Club v. Dir. or Revenue*, 933 S.W.2d 400, 402 (Mo. banc 1996).

In *Old Warson*, this Court held while "charges which relate to the right to enjoy the use of the club facilities are for services and subject to sales tax[,]" "[n]ot every charge exacted from members of a social or recreational organization is for goods or services." *Id.* at 403. "[F]ees paid for the right to participate in the operation and control of the organization are not paid in exchange for goods or services" and, therefore, are not taxable. *Id.* In *Meramec Valley*, this Court similarly noted "payment of dues by a member of the Association for which the member receives something other than recreational service is not subject to sales tax." *Meramec Valley Owners' Ass'n, Inc. v. Dir. of Revenue*, 936 S.W.2d 794, 796 (Mo. banc 1997).

In both *Old Warson* and *Meramec Valley*, members held an equity interest in the organization's property. 933 S.W.2d at 403; 936 S.W.2d at 796. In *Old Warson*, this Court determined capital assessments paid by members with an equity ownership in the club were not taxable because improving the property necessarily improved the value of the members' ownership interest, while capital assessments paid by members without an equity ownership in the club were taxable as purchases to use the club's facilities and services.[5] 933 S.W.2d at 403-04. In *Meramec Valley*, this Court determined annual dues paid by members, who all had an equity ownership in the Association, were not taxable because

---

[5] This Court also determined that capital assessments paid by members without an equity ownership in the club, but that were refundable, were not taxable because they were loans to the club. *Old Warson*, 933 S.W.2d at 404.

the Association used the annual dues to maintain the property, which increased the property's market value and thereby provided a benefit beyond recreational access to equity owners. 936 S.W.2d at 796.[6]

When any portion of fees paid to an organization are paid for recreational services, that portion is taxable, pursuant to § 144.020.1. *Old Warson*, 933 S.W.2d at 404. The issue squarely presented in this case is what the consequences are when the taxpayer does not provide proof sufficient for this Court to determine what portion of the fee is taxable. *Gott v. Dir. of Revenue*, 615 S.W.3d 52 (Mo. banc 2020).

In *Gott*, a business rented portable toilets to customers. *Id.* at 54. The business charged its customers "a fee for their use of its portable toilets based upon the number of portable toilets and the duration of use, which includes any ancillary services needed." *Id.* at 56. Ancillary services include cleaning and servicing the portable toilet. *Id.* The Commission determined the business was subject to taxation because the portable toilet service was not exempt from sales tax. *Id.* at 54. The business owner did not dispute the portable toilets are tangible personal property, but disputed whether the fees received for

---

[6] The Director urges this Court to overrule *Meramec Valley*. This Court, however, need not take such action because *Meramec Valley* is factually distinguishable. In *Meramec Valley*, "[t]o become a member of the Association one must purchase a 1/1950th interest in real property" of the Association. 936 S.W.2d at 795. "Annual dues paid by the members constitute the source of revenue used to fund the operation of the Association." *Id.* While "[t]he dues are used for the operation and maintenance of all recreational and non-recreational services and facilities[,]" the operation and maintenance of facilities did not relate to any specific good or service, but instead related to the real property itself. *Id.* at 796. Therefore, the dues paid for the maintenance of the facilities, which increased the market value of the property, in which all members had an equity interest. *Id.* As was the case in *Old Warson*, the dues in *Meramec Valley* "were to improve the value of their membership assets, separate and apart from any payment of operating expenses related to the receipt of some service." *Old Warson*, 933 S.W.2d at 403.

8

the business's services are taxable. *Id.* at 55. This Court determined the business was subject to taxation, concluding that, "[b]ecause [the business] fails to separate amounts representing its cleaning or servicing from its rentals, it is impossible for this Court to determine whether a portion of [the business's] receipts should be excluded from taxation." *Id.* at 56. Therefore, the business "fail[ed] to meet [its] burden demonstrating [the business] is exempt from sales taxation." *Id.*

Here, the Commission found the Club's monthly membership dues did not convey benefits other than access to recreational activities. The Club argued monthly membership dues granted members the right to vote. But the Commission found, while Club members have certain voting rights allowing them to participate in decisions related to the operation and control of the Club, there was no evidence showing the monthly membership dues secured the right to vote in the first place because those voting rights are tied to the initiation fees rather than monthly membership dues. The Commission also concluded the Club failed to demonstrate monthly membership dues secured any equitable ownership interest in the Club. Furthermore, upon the Club's dissolution, members do not have a guaranteed right to share in the proceeds of the Club's sale. While Club members may vote to determine what happens to the Club's assets, this is not an equitable ownership interest in the Club.

Moreover, in this case, the Club failed to separate what portion, if any, of the monthly membership dues were paid for something other than recreational services. Therefore, it would have been impossible for this Court to determine what portion, if any, of the monthly membership dues should be excluded from taxation. Because the Club

9

failed to meet its burden of proving members receive more than recreational services in exchange for monthly membership dues, this Court finds the monthly membership dues are subject to sales tax, pursuant to § 144.020.1(2). The Club is not owed a refund for taxes paid on Club members' monthly membership paid dues.[7]

### Conclusion

The Commission's decision is affirmed.

_____
Zel M. Fischer, Judge

All concur.

---

[7] The Club also argues the Commission erred in determining the Director's denial of the Club's refund claim was not a change in previous policy or interpretation based on at least nine letter rulings made by the Director previously. The Club argues the Director's decision in this case was a change in policy or interpretation and can only be applied prospectively, pursuant to § 32.053, RSMo 2016. Section 32.053, RSMo 2016, provides: "Any final decision of the department of revenue which is a result of a change in policy or interpretation by the department effecting a particular class of person subject to such decision shall only be applied prospectively." The Commission found, however, the Director's letter rulings apply only to the particular fact situation, and applicant, stated in the letter ruling request. This Court agrees. In this case, the Club never applied for a letter ruling from the Director. The Director has the authority to issue the previous letter rulings, defined as "a written interpretation of law by the director to a specific set of facts provided by a nonstate party[,]" "subject to the terms and conditions set forth in properly published regulations." Section 536.021.10, RSMo 2016. Pursuant to 12 C.S.R. 10-1.020(7)(A)-(B), letter rulings "shall apply only to the particular fact situation stated in the letter ruling request" and "shall apply only to the applicant[.]" Therefore, the previous letter rulings do not apply to the Club nor the factual situation in this case. The letter rulings are not a prior law, previous policy, or regulation of the Director, pursuant to § 32.053, RSMo 2016, and have no bearing on the resolution of this case.